NUMBER
13-03-533-CV

                                 COURT OF
APPEALS

                     THIRTEENTH DISTRICT OF
TEXAS

                         CORPUS CHRISTI B EDINBURG

 

A.P. MCMASTER, STEVE RITCHMAN AND 

SUN GLO JUICES,                                                                          Appellants,

                                                             v.

RICHARD DAVIDSON AND 

SOUTHWEST JUICES ASSOCIATES,                                            Appellees.

 

 

                     On appeal from the 93rd District
Court

                                        of
Hidalgo County, Texas.

 

 

 

                                M
E M O R A N D U M   O P I N I O N

 

     Before Chief Justice
Valdez and Justices Hinojosa and Rodriguez

 

      Opinion by Chief
Justice Valdez

 








This is an appeal from a judgment in a bench trial
stemming from a business arrangement gone awry. 
Appellants, A. P. McMaster and Steve Richtman, sued appellees, Richard
Davidson and Southwest Juice Associates, seeking (1) a declaration that a
partnership existed among the parties, (2) unpaid profit disbursements from the
partnership, and (3) unpaid commissions owed Richtman for his work as a broker
for Southwest.  Appellees countersued for
(1) damages based on alleged non-compete violations and (2) lost profits from a
terminated contract.

The trial court entered final judgment holding that
(1) McMaster and Richtman take nothing by their causes of action, (2) no
partnership existed among the parties, and (3) Richtman owed appellees actual
damages in the amount of $50,000, plus post judgment interest at the rate of
10% annually.  No findings of fact and
conclusions of law were requested or appear in the final judgment.

Appellants contest the judgment and claim the court
erred (1) in finding no partnership existed, because there was sufficient
evidence to show that it did exist, (2) in awarding appellees $50,000, because
there was no evidence or insufficient evidence to show liability or arrive at
that amount, and (3) in denying Richtman his brokerage commissions, because
their unpaid status was uncontested.  We
affirm the judgment of the trial court.

I.  Facts and
Procedural History

A.  Parties to
the Suit








Davidson owns Southwest Juice Associates (d/b/a
Southwest Associates, hereinafter ASouthwest@), a business operating in Hidalgo County,
Texas.  McMaster is an employee of
Southwest.  Richtman is a juice broker in
California operating under the name R&H Marketing.  R&H Marketing had a brokerage contract
with Southwest to sell its juice to customers on the west coast.  McMaster and Richtman also own a separate
California corporation called Sun Glo Juices, Inc. (ASun GloBCA@).  Sun GloBCA leased a 50,000 gallon juice tank at a Sunkist
facility in California.  Each month
Sunkist billed Sun GloBCA for use of its tank, and Sun GloBCA forwarded the bill to Southwest for payment.  In the summer of 2001, the parties discussed
selling Davidson a one-third interest in Sun GloBCA,
but Davidson recommended setting up a limited liability corporation instead.  Davidson had an attorney draft the paperwork
and called it McRich Sun Glo, LLC. 
Although the corporation was chartered, it remained inactive, doing no
business.  

B.  Sun Glo
Operation

Southwest began shipping Mexican orange juice to a
Sunkist facility in California for blending with other juices.  This operation, though separate from the
California corporation, was also called Sun Glo (ASun
GloBTX@).  With
regard to this operation, Davidson, Richtman, and McMaster managed the
finances, sales and procurement, respectively. 
As compensation for their involvement, each was to receive one-third of
the net profits the operation generated. 
A Southwest employee handled accounting for the Sun GloBTX operation and kept separate balance sheets from
those of Southwest.

Richtman received checks from Southwest for his
share of the profits from the Sun GloBTX operation. 
The memos on the checks read Asettlement of 2001 profit distribution of Sunglo@ and ASunglo distribution.@ 

C.  Claims of
the Parties

1. 
Partnership

McMaster and Richtman claim the Sun GloBTX operation functioned as a partnership wherein
each party had one-third ownership.  They
claim that while the business was initially operated under Southwest, the
parties intended to later break away from Southwest.  Davidson denies such a partnership ever
existed and asserts the project operated solely under Southwest.  No legal paperwork formally establishes Sun
GloBTX as a partnership.

2.  Unpaid
Disbursements of Profits








Although a Southwest employee handled accounting for
Sun GloBTX as a division of Southwest, Richtman had his own
accountant tracking the records for Sun GloBTX.  In January 2002, Richtman compared his
accountant=s report against Davidson=s report and found apparent discrepancies.  Richtman contacted Davidson and asked for his
distribution of the profits, noting that the discrepancies could be discussed
later.  Over the course of the year,
Richtman alleged discrepancies relating to freight bills, juice costs, and
inventory, totaling $36,000.  Richtman
claims that in November 2002, he and Davidson went over the balance sheet, and
Davidson agreed the amounts should be corrected.  

Richtman testified that he did not receive any
disbursement of profits after June 2002, and that by his calculations he is
owed $60,500 and McMaster is owed $77,800. 
Richtman said that when he asked Davidson for his profits, Davidson
denied a partnership existed and said there were no profits to distribute.  

One source of contention is the calculation of juice
costs Southwest billed back to the Sun GloBTX operation. 
Richtman testified that Sun GloBTX used Southwest to buy juice for three cents a
pound over Southwest=s cost. 
Richtman contended Southwest charged Sun GloBTX based on the actual cost of obtaining juice from
one supplier rather than on an average price of all the suppliers, resulting in
Sun GloBTX being charged eleven cents per pound more than
other customers.  He admits he did not
know the actual cost to Southwest, so he used the market value to make his
calculation.  Davidson claims the
agreement was to use actual costs, not average costs, in the calculation.

3.  Unpaid
Brokerage Commissions

Richtman claims that Davidson owes him $7,700 in
outstanding brokerage commissions but that he had not been paid since December
2002.  

4.  Violations
of Non-Compete Clauses








Davidson denied appellants= claims and counterclaimed that Richtman and
McMaster had violated their agreements with Southwest.  Specifically, he claimed Richtman breached
his exclusive marketing agreement with Southwest by marketing the juice of
competitors to the damage of Southwest. 
He claimed McMaster, an employee of Southwest, had sold juice for his
own account or for competitors of Southwest, resulting in lost profits to
Southwest.  Richtman denies there was an
exclusive contract, but paragraph 9 of the brokerage agreement between Richtman
and Southwest states that Aas long as Southwest is able to supply the required
citrus juice concentrates or single strength citrus juices at competitive
prices, the broker will only represent citrus juices from Southwest.@

5. 
Termination of the Sunkist Contract

In June and July 2002, Southwest made two purchase
orders with Sunkist Growers.  The first
purchase order was for fifteen tankers of tangerine concentrate.  The words ASun
Glo@ do not appear on the purchase order.  The second purchase order was for one million
pounds of Valencia juice concentrate. 
The ship-to address reads ASouthwest Associates,@
followed by ASun Glo Juice@ in parenthesis. 
The purchase order is signed, ARichard Davidson, Southwest Juice Associates.@  Both
purchase orders called for the product to be used or sold by December 31,
2002.  Not all the product was moved by
that deadline, and Sunkist granted an extension until the end of January
2003.  

On January 6, Richtman filed an original petition
against Southwest.  In that petition, he
alleged that Southwest was selling and shipping juice Southwest had purchased
on behalf of Sun GloBTX and thereby undermining his share of the
profit.  He requested and obtained a
restraining order preventing Southwest from selling the disputed juice.  The court granted a set-aside order on
February 3 stating, A[i]n the event any juice which is to be received by
either party from Sunkist in California is sold between the date of this order
and the hearing on the Temporary Injunction, the proceeds of such sale shall be
segregated and deposited into the registry of the Court.@  Richtman
stated that because he was a party to the suit, he interpreted this language as
giving him the right to sell the juice so long as he placed the proceeds from
the sale into the registry of the court.








Richtman approached Sunkist through R&H
Marketing to purchase some of the disputed juice.  He explained that he was motivated by
knowledge that Southwest needed to move the product quickly yet had no orders
for it.  Neither Richtman nor R&H
Marketing had a direct arrangement with Sunkist to receive any of the juice.   On February 25, Sunkist terminated its
contract with Southwest, resulting in a loss of the inventory.

The parties dispute the reason why Sunkist
terminated.  Davidson blames Richtman for
the termination, noting that Sunkist terminated the contract a few days after
Richtman improperly tried to acquire Southwest=s
juice from Sunkist.  The email to
Davidson from Sunkist that terminated the contract explains, ASunkist does not need to be involved in any way with
your legal issues at this time.@  Richtman
argues that the contract terminated because Southwest failed to move the
product by the deadline.  Davidson
counters that Southwest could not have moved the product by the deadline because
of the restraining order.  At trial,
Richtman testified that he had no paperwork to show that Southwest had
purchased the disputed juice on behalf of Sun GloBTX
because it was a verbal agreement.  He
estimated the lost inventory cost Sun GloBTX $150,000 in profits.

D.  Final
Judgment

The trial court entered a final judgment on June 17,
2003, holding that (1) McMaster and Richtman take nothing by their causes of
action, (2) no partnership existed among the parties, and (3) Richtman owed
Davidson and Southwest actual damages in the amount of $50,000, plus
post-judgment interest at the rate of 10% annually.  No findings of fact and conclusions of law
were requested or filed.

II.  Standard
of Review








In nonjury trials such as this, any party may
request the court to state in writing its findings of fact and conclusions of
law.  Tex.
R. Civ. P. 296.  The record does
not show any such request by the parties.  Where findings of fact and conclusions of law
are not filed, the trial court is presumed to have made all the necessary
findings to support its judgment.  Roberson v. Robinson, 768 S.W.2d 280, 281
(Tex. 1989).  When a reporter=s record is part of the record, legal and factual
insufficiency of implied findings may be challenged on appeal the same as a
trial court=s findings of fact. 
Id.  The applicable
standard of review is the same regardless of whether the findings come from a
bench or jury trial.  Id.  The judgment of the trial court should be
affirmed if it can be upheld on any legal theory that finds support in the
evidence.  Bishop v. Bishop, 359
S.W.2d 869, 871 (Tex. 1962).

III.  Damages
to Davidson and Southwest

Richtman first claims the trial court erred in
awarding Southwest $50,000 in actual damages because there was no evidence, or
factually insufficient evidence, presented at trial to show his liability or to
show $50,000 in damages.  We address the
no-evidence and factual insufficiency claims separately below.

A.  No
Evidence

In reviewing a "no evidence" claim, we may
consider only evidence and inferences that tend to support challenged findings
while disregarding all evidence and inferences to the contrary.  Sherman v. First Nat'l Bank, 760
S.W.2d 240, 242 (Tex. 1988).  The
no-evidence challenge cannot be sustained if there is more than a scintilla of
evidence to support the findings.  Id.  If more than a scintilla of evidence exists,
it is legally sufficient. Browning‑Ferris, Inc. v. Reyna, 865
S.W.2d 925, 928 (Tex. 1993).  More than a
scintilla of evidence exists if the evidence furnishes a sufficient basis for
reasonable minds to reach differing conclusions about the existence of a vital
fact.  Kindred v. Con/Chem, Inc.,
650 S.W.2d 61, 63 (Tex. 1983).








In this case, there is very little evidence in the
reporter=s record to explain how the court might have arrived
at $50,000 in damages.  The reporter=s record shows almost no discussion during trial
relating to damage awards sought by Davidson in his counterclaim.  Davidson offered no evidence during trial of
damages resulting from appellants= alleged selling of juice outside their contractual
rights.  In estimating damages from the
terminated contract, Davidson said he believed Richtman=s estimate of lost profits was too high but did not
offer his own estimate.

Davidson=s counterclaim sought unspecified damages resulting
from McMaster and Richtman=s breach of non-compete agreements.  After Sunkist cancelled the contract with
Southwest, both parties filed a motion for continuance.  Both parties claimed further damages based on
the lost inventory and needed more time to calculate them.  McMaster and Richtman filed an amended
petition but again declined to list any specific amounts in damages resulting
from the cancelled contract.  Davidson
did not file an amended answer.  Davidson=s brief as appellee is similarly unhelpful.  He justifies the trial court=s finding of liability solely on the argument that
Sunkist cancelled right after Richtman tried to purchase the juice:  AMr. Richtman=s attempt to acquire the juice and Southwest=s objection to any such sale . . . resulted in the
termination of the contract.@ 

In short, the record shows Sunkist terminated its
contract with Southwest, resulting in lost inventory.  Richtman estimated the lost profit value of
that inventory at $150,000.  Though the
evidence is slight, we hold it furnishes a reasonable basis for reasonable
minds to reach differing conclusions about the existence of a vital fact.  See Kindred, 650 S.W.2d at 63.  We conclude the evidence is legally
sufficient.  Sherman, 760 S.W.2d
at 242.  

B.  Factual
Sufficiency








In determining the factual sufficiency of the
evidence, we must consider all the evidence, setting aside the verdict only if
it is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust.  Cain v. Bain,
709 S.W.2d 175, 176 (Tex. 1986).  Without
the trial court=s reasoning to guide us, we must presume the trial
court made all the necessary findings to support its judgment.  Roberson, 768 S.W.2d at 281.  After consideration of the entire record, as
summarized above, we cannot say that the verdict is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Thus,
the evidence is factually sufficient.

This issue is overruled.

IV.  Sun Glo
Partnership

McMaster and Richtman claim the trial court erred in
holding the Sun GloBTX partnership did not exist.             In determining whether a partnership
existed among the parties, McMaster and Richtman refer us to the business
organizations code section 152.051, defining a partnership.  See Tex.
Bus. Org. Code Ann. ' 152.051 (Vernon 2004-05).  The cited business organizations code section
becomes effective January 1, 2006.  We
therefore turn instead to contemporary provisions in effect at this time.

A partnership is Aan
association of two or more persons to carry on a business for profit as owners
. . . , whether the persons intend to create a partnership and whether the
association is called a >partnership,= >joint venture,= or other name.@  Tex. Rev. Civ. Stat. Ann. art. 6132b‑2.02
(Vernon Supp. 2004-05).  The factors
indicating the creation of a partnership include (1) receipt of or right to
receive a share of profits in the business, (2) expression of intent to be
partners in the business, (3) participation or right to participate in control
of the business, (4) sharing or agreeing to share losses of the business or
liability for claims by third parties against the business, and (5)
contributing or agreeing to contribute money or property to the business.  Id. at art. 6132b-2.03.  Not all of these factors need be present for
a partnership to exist, and no one factor is dispositive.  See McDowell v. McDowell, 143 S.W.3d
124, 129 (Tex. App.BSan Antonio 2004, pet. denied).  The receipt of a share in the profits, alone,
does not by itself constitute proof of a partnership.  See id.








Richtman agues that there was a verbal agreement to
form a partnership.  However, during
trial, Richtman admitted that Sun GloBTX was not formally established:  ABecause we had not set up Sun Glo, I had a brokerage
agreement with Southwest.@  In his
deposition, when asked what capital contribution he made toward the formation
of a partnership, he replied, AThat was never formed.@  Richtman explained at trial that by this he
meant that the partnership was never formally signed.  He explained that Sun GloBTX was a separate entity from Southwest Aas far as keeping track of costs, expenses, sales.  But as far as legal, it was part of Southwest.@  McMaster
made similar assertions about the existence of a partnership, but when asked in
his deposition what type of business entity he thought Sun GloBTX was, he answered that ASun Glo was only in the making.@

Nothing in our review of the record demonstrates
McMaster or Richtman acted in an ownership capacity or established any other
factors tending to show the existence of a partnership with regard to Sun GloBTX.  See
McDowell, 143 S.W.3d at 129.  We find
no evidence that Sun GloBTX was anything more than a division of
Southwest.  Roberson, 768 S.W.2d
at 281.  This issue is overruled.

V.  Damages to
Richtman 

Richtman claims the trial court erred in denying him
unpaid broker commissions from Southwest. 
He stated during trial that Southwest owed him $7,700 in unpaid
commissions, and Southwest=s accountant did not dispute this.  The accountant explained that Davidson had
told him to withhold Richtman=s commission check because there were offsetting
claims against it.








Again, the record does not explicitly demonstrate
why the trial court granted nothing to Richtman.  Davidson argues on appeal that the trial
court, presented with evidence of a $150,000 loss to Southwest and a $7,700
loss to Richtman, may have offset the award to Southwest by the broker
commissions owed to Richtman.  With
nothing in the record to guide us, we have no basis to disagree, as it was appellant=s burden to show that the trial court=s judgment was not supported by any legal theory
raised by the evidence.  See Point
Lookout West, Inc. v. Wharton, 742 S.W.2d 277, 278 (Tex. 1987) (per
curiam).  This issue is overruled.

VI. 
Conclusion

We affirm the judgment of the trial court.

 

 

 

                                           

Rogelio Valdez,

Chief Justice

 

 

 

Memorandum
Opinion delivered and filed

this
22nd day of August, 2005.