**KELLY OIL CO., INC. and Natural Ventures, Inc., Appellants,**

v.

**Frank SVETLIK, Appellee.**

No. 13-97-410-CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 20, 1998.

Scott C. Lannie, Baytown, for Appellants.

James P. Barnett, Jr., Houston, for Appellee.

Before SEERDEN, C.J., and YANEZ and CHAVEZ, JJ.

**OPINION**

SEERDEN, Chief Justice.

After a non-jury trial, judgment was rendered in favor of Frank Svetlik, appellee, for overriding royalties due under an oil and gas lease maintained on property located in the state of Mississippi. Kelly Oil Co., Inc. and Natural Ventures, Inc., appellants, argue that (1) the trial court lacked subject matter jurisdiction, (2) the trial court's findings were unsupported by the evidence, and (3) the

trial court erred in imposing joint and several liability. We vacate the judgment of the trial court, and enter judgment dismissing the case for lack of jurisdiction.

### FACTUAL BACKGROUND

In 1987, Svetlik received an assignment from United Texas Petroleum Corp. ("United") of an overriding royalty interest in oil and gas leases located in the State of Mississippi. The overriding royalty interest applied to leases with production from three wells, the Rhoda Brown Well, the Gordon Brown Well, and the Forest Lee Well. The assignment to Svetlik was specifically made subject to the terms of the underlying oil and gas leases.

At issue in the underlying lawsuit was the applicability of the termination by cessation of operations clauses found within the underlying leases. While differing in several respects, these clauses generally provide for the automatic termination of the leases in the event that production ceased after the primary term for more than sixty or ninety days, and no drilling or reworking operations were conducted within that time. If applicable, as argued by appellants, such clauses would terminate the original leases and, as a result, any interest received under the leases by Svetlik.

Svetlik received royalty payments from production on the leased premises from March, 1987 until September, 1989. At that time, United, under another name, declared bankruptcy.

Kelly Hiser, the president of Kelly Oil, testified she discovered that United was attempting to sell its interests in the leases pertaining to the Rhoda Brown and Gordon Brown Wells. After contacting the bankruptcy trustee and learning from the mineral owners that the underlying leases had terminated, Kelly Oil negotiated new leases with the mineral owners on June 8, 1991, and May 26, 1992. These newly negotiated leases were specifically conditioned upon the cancellation of the original leases. Thereafter, on August 28, 1992, Kelly Oil purchased all rights, title, and interests held by the bankruptcy trustee in the leases covering the Rhoda Brown Well. Then, on March 18, 1993, Kelly Oil purchased all rights, title, and interests held by the bankruptcy trustee in the leases covering the Gordon Brown Well and the Forest Lee Well. According to Hiser's testimony the negotiations for this acquisition from the trustee focused on the value of the equipment on the realty, as opposed to the existence and value of the leases themselves.

In October 1992, Kelly Oil produced 28,971,000 cubic feet of natural gas from the Rhoda Brown Well. According to appellants, this was the first production from the leases since production ceased due to a high pressure line rupture in January 1992. According to appellants, this line was not even repaired until September 1992. Production out of the Gordon Brown Well was not evidenced until January 1994, and no production is evidenced, at any time, from the Forest Lee Well. On February 1, 1993, Kelly Oil assigned its rights and interests to Natural Ventures, Inc.

In October 1994, Svetlik sued appellants seeking payment on his overriding royalty interest. Svetlik couched his suit in terms of conversion and breach of contract. Appellants counterclaimed seeking a declaration from the court as to the validity, rights, obligations, and duties of the parties to the assignment and leases underlying Svetlik's lawsuit.

In April 1995, appellants filed a plea to the jurisdiction. In support of this plea, appellants argued that Svetlik's lawsuit "seeks to adjudicate title to real property in Hancock County, Mississippi." Svetlik responded by arguing that his suit was mischaracterized, and that his suit was for conversion, an accounting, and breach of contract. After a hearing, the trial court denied appellants' plea.

Trial was had before the court on February 10, 1997. The trial court entered judgment that Svetlik recover from appellants, jointly and severally, $87,000 for unpaid overriding royalties. On April 4, 1997, the trial court entered findings of fact and conclusions of law wherein the trial court recited that Svetlik acquired and owns an overriding royalty interest of 5% of 8/8 in the lands covered

by the three wells, and that during times of no or sporadic production (January 1992— September 1992), continuous operations were conducted thereby extending the terms of the original leases.

### DISCUSSION

■ In their first point of error, appellants challenge the trial court's and, resultantly, this Court's jurisdiction. Specifically, appellants claim that since the determinative issue in- the lawsuit involves an adjudication of interests in real property located outside of the State of Texas, a Texas court lacks subject matter jurisdiction to hear the case. We agree.

■ It is well-settled that a royalty interest in an oil and gas lease is an interest in real property, held to have the same attributes as real property. *See e.g., Garza v. DeMontalvo,* 147 Tex. 525, 217 S.W.2d 988, 992 (Tex.1949) (citing *Sheffield v. Hogg,* 124 Tex. 290, 77 S.W.2d 1021, 1024 (Tex.1934)); *Luecke v. Wallace,* 951 S.W.2d 267, 273 (Tex. App.—Austin 1997, no writ). Such is true of an overriding royalty in an oil and gas lease. *Consolidated Gas & Equip. Co. of America v. Thompson,* 405 S.W.2d 333, 336 (Tex.1966); *Karnei v. Davis,* 409 S.W.2d 439, 442 (Tex. Civ.App.—Corpus Christi 1966, no writ).

■ It is also well-settled that Texas courts have no power or jurisdiction to adjudicate title to interests in real property located in another state. *Holt v. Guerguin,* 106 Tex. 185, 163 S.W. 10, 12 (1914); *Hartman v. Sirgo Operating, Inc.,* 863 S.W.2d 764, 766 (Tex.App.—El Paso 1993, writ denied); *Miller v. Miller,* 715 S.W.2d 786, 788 (Tex. App.—Austin 1986, writ ref'd n.r.e.); *Carmichael v. Delta Drilling Co.,* 243 S.W.2d 458, 460 (Tex.Civ.App.—Texarkana 1951, writ ref'd). Texas courts may, however, compel a party over whom it has jurisdiction to execute a conveyance of a real property interest situated in another state. *McElreath v. McElreath,* 162 Tex. 190, 345 S.W.2d 722 (1961); *Hartman,* 863 S.W.2d at 766; *Miller,* 715 S.W.2d at 788. "The distinguishing factor between these two principles is whether

the cause before the Court involves a naked question of title." *Hartman,* 863 S.W.2d at 766 (citing *Massie v. Watts,* 10 U.S. (6 Cranch) 148, 3 L.Ed 181 (1810)).

The primary purpose of Svetlik's lawsuit was to enforce his overriding royalty interests in a number of oil and gas leases. However, as pointed out by appellants, the validity of Svetlik's claims hinged upon a finding that the original oil and gas leases through which Svetlik claimed, were still in existence. If they are, Svetlik remains the owner of an overriding royalty under the original oil and gas leases via the assignment from United. Appellants, however, argue that the original leases expired on their own terms due to the absence of production or operations, thereby terminating Svetlik's overriding royalty interest. In this respect, keeping in mind the nature of an overriding royalty, the outcome of Svetlik's lawsuit depends upon a determination as to who owns the title to a real property interest.

Contrary to the manner in which Svetlik pleaded his claims, his lawsuit is not one for breach of contract or conversion. While it is true that an oil and gas lease is a contract in the sense that it is a conveyance of realty upon terms and conditions which may be contractual in nature, Svetlik's claim for breach of contract admittedly depends upon a finding that he is the owner of an overriding royalty under the original oil and gas leases.[1] As such, we lack jurisdiction over the merits of his claim. *See Renwar Oil Corp. v. Lancaster,* 154 Tex. 311, 276 S.W.2d 774, 776 (1955) (suit is essentially one for recovery of interest in land despite being cast as one for declaratory judgment); *Prairie Producing Co. v. Angelina Hardwood Lumber Co.,* 882 S.W.2d 640, 647 (Tex.App.— Beaumont), *modified on rehearing,* 885 S.W.2d 640 (Tex.App.—Beaumont 1994, writ denied) ("A Texas jury cannot do indirectly what the law prohibits it from doing directly, *i.e.,* a jury cannot award damages based upon its own determination of title to foreign realty."); *Carmichael,* 243 S.W.2d at 460 (plaintiffs' claim for proceeds from oil sales not severable from underlying dispute regarding

---

1. Svetlik states in his appellate brief: "In order to establish conversion Svetlik had to establish that he had title to the property converted, i.e. the oil and gas produced...."

existence of alleged ownership in an oil and gas lease located outside Texas).

Svetlik, in arguing that his claims are for breach of contract and conversion, relies upon *Copper State Mining Co. v. Kelvin Lumber & Supply Co.*, 227 S.W. 938, 939 (Tex. Comm'n App.1921, holding approved). *Copper State,* however, is readily distinguishable from the present case. The plaintiffs in *Copper State* were the undisputed holders of a mining claim in real property owned by the United States and located in Arizona. The defendant had purchased ore mined from the claim by third parties, and then transported the ore from Arizona to Texas. The plaintiffs filed suit in Texas seeking the actual recovery of the ore, or alternatively, the value of the property. The issue of jurisdiction was raised by the defendant. The Commission of Appeals found, under the facts presented, that the lower courts maintained jurisdiction to determine ownership of minerals removed from out-of-state property. In so finding, the Commission of Appeals relied upon the absence of any legitimate dispute regarding the ownership of the interests held in the real property from which the minerals were extracted. Specifically, the Commission of Appeals characterized the third party responsible for extracting the ore as a "naked trespasser," whose efforts to locate on the claim as "absolutely void." *Id.* at 940. In other words, the issues presented in *Copper State* did not, as do the issues in the case at hand, involve any disputed issue of title to an interest in real property located outside the State of Texas.

CONCLUSION

In light of the above discussion, we conclude that the trial court lacked jurisdiction to address the merits of Svetlik's claims. Accordingly, we sustain appellants' first point of error. Due to our disposition on this point we need not address appellants' other points of error. The judgment of the trial court is set aside and the case is dismissed.