James McDOWELL, Appellant,

v.

Gregory McDOWELL, Appellee.

No. 04–02–00829–CV.

Court of Appeals of Texas, San Antonio.

April 28, 2004.

Rehearing Overruled June 14, 2004.

Jeff Small, Law Office of Jeff Small, Robert W. Negley, M. Frank Russell, Barton & Schneider, L.L.P., San Antonio, for Appellant.

Larry Zinn, Attorney At Law, San Antonio, Jeffrey S. Mahl, Attorney At Law, Del Rio, TX, for Appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, PAUL W. GREEN, Justice, and KAREN ANGELINI, Justice.

### OPINION

Opinion by PAUL W. GREEN, Justice.

This case arises from a dispute over the existence of a partnership and the division

of the alleged partnership's assets between brothers James and Gregory McDowell. Following a bench trial, the trial court found a partnership to exist between the two parties. The court rendered judgment in favor of appellee Gregory McDowell, ordering an accounting of the partnership and holding that Gregory was entitled to half of the proceeds from the sale of property belonging to the partnership. The judgment also awarded attorney's fees to Gregory. Appellant James McDowell's motion for new trial was overruled. He now appeals to this Court in three issues.

## BACKGROUND

In the late 1970s or early 1980s, Faye McDowell ("Faye") and her son, Appellee Gregory McDowell ("Greg") purchased a plot of land ("Trotwood Park property") in Orange County, Florida. The plot consisted of four separate lots and a house. Faye and Greg remodeled the house on the land where they, along with Greg's wife and daughter lived. Soon after the purchase, Faye, Greg, and appellant James McDowell ("James"),[1] Faye's son and Greg's brother, decided to form a corporation which they called GEF, Inc. The corporation owned both the land and the house.[2]

In 1984, the corporation took steps to construct a warehouse on the Trotwood Park property. The warehouse was to hold James's manufacturing company. GEF, Inc. ran into problems, however, when the bank refused to give them a loan unless the property was held under a single name rather than by the corporation. In order to facilitate the loan, both Greg and Faye agreed to sell their shares to James. Greg, however, wanted to remain a "silent partner" in the business.

Greg and Faye signed the transfer documents, which included a stock purchase agreement, promissory note, and mortgage deed, selling their shares in the corporation to James on December 27, 1984, in the presence of James's attorneys. Neither Greg nor Faye was represented by counsel at the meeting where the documents were signed. Under the terms of the promissory note, James was to pay Greg $490.84 a month, beginning on February 1, 1985, for 30 years, a total of $73,776.00. It is after the signing of the transfer documents that the parties' factual accounts begin to diverge.

Greg claims that he expressed his desire to remain a partner during the meeting where the papers were signed. According to James, however, it wasn't until after the meeting that Greg approached him, stating that he felt he still owned half of the Trotwood Park property. In either case, the partnership became profitable in 1991.[3] Beginning in 1992 and until 1999, both James and Greg filed income tax returns claiming approximately equal amounts from rental income. In 1999, James sold the property and attempted to pay Greg one lump sum, the remainder of the $73,776.00 he owed him under the mortgage agreement and promissory note. Greg requested 50% of the sale proceeds, and James refused to comply, refuting the existence of a partnership.

---

1. Throughout the record, James is also referred to as Eddy.

2. James also owned two lots adjacent to the property which is the subject of this suit. Initially, James lived in a house on the two lots. He later converted the property into office buildings for his business.

3. Sometime in the early to mid–1990's James began to rent the warehouse to another company. Neither the exact date the rental began nor the exact amount of the rent received is evident from the record.

In December of 2000, Greg filed suit against James, claiming that a partnership was formed in 1984 and that James had excluded him from the management of the property and was now attempting to deprive him of his interest in the partnership and any profits that resulted from that interest. Following a bench trial, the trial court found that a partnership did exist and ordered James to pay Greg half of the profits resulting from the sale of the partnership's assets, namely the Trotwood Park property. The trial court also issued findings of fact and conclusions of law stating the same. James now appeals in three issues.

## JURISDICTION

■ In his first issue, James claims Texas courts do not have subject matter jurisdiction to render judgment apportioning an interest in real property which is located in Florida. In support of this proposition, James cites the case of *Kelly Oil Co., Inc. v. Svetlik,* 975 S.W.2d 762, 764 (Tex.App.-Corpus Christi 1998, pet. denied). Under *Kelly Oil* and cases like it, it is well-settled law that Texas courts have no power or jurisdiction to adjudicate title to interest in real property located in another state. *Holt v. Guerguin,* 106 Tex. 185, 163 S.W. 10, 12 (1914); *Kelly Oil Co., Inc.,* 975 S.W.2d at 764; *Miller v. Miller,* 715 S.W.2d 786, 788 (Tex.App.-Austin 1986, writ ref'd n.r.e.). Although this law still holds true, in making his argument against the subject matter jurisdiction of Texas courts, James overlooks other relevant Texas law.

■ Texas courts have subject matter jurisdiction to enforce an *in personam* obligation by ordering a party to convey a real property interest located in another state. *Kelly Oil Co., Inc.,* 975 S.W.2d at 764; *see e.g. McElreath v. McElreath,* 162 Tex. 190, 345 S.W.2d 722 (1961); *Miller,*

715 S.W.2d at 788. In fact, the *Kelly Oil* court even explains that the distinguishing factor between the two principles is whether the cause before the Court involves a "naked question of title." *Kelly Oil Co., Inc.,* 975 S.W.2d at 764.

■ The nature of a lawsuit is based on facts alleged in the petition, rights asserted, and relief sought. *Renwar Oil Corp. v. Lancaster,* 154 Tex. 311, 276 S.W.2d 774, 775 (1955); *Prostok v. Browning,* 112 S.W.3d 876, 915 (Tex.App.-Dallas 2003, no pet.); *Finder v. O'Connor,* 615 S.W.2d 283, 284 (Tex.Civ.App.-Dallas 1981, writ dism'd); *Royal v. Moore,* 580 S.W.2d 159, 163 (Tex.Civ.App.-Houston [1st Dist.] 1979, no writ). In the past, Texas courts have found that when an action seeks to adjudicate partnership rights, the action is one *in personam* and not one for the recovery of land, even if the trial court must dispose of real property owned by the partnership. *Finder,* 615 S.W.2d at 284–85; *Royal,* 580 S.W.2d at 163. In addition, the trial court clearly had *in personam* jurisdiction over the case as both James and Greg lived in Texas at the time the suit was filed. Finally, the central issue in the case did not involve who held title to the Trotwood Park property, but, rather, whether a partnership existed between the McDowells and, if so, to what extent Greg held an interest in the partnership. This is clearly not a "naked question of title" as suggested by James because the central issue of the case goes to the existence of a partnership not whether Greg held title to the land. *See Kelly Oil Co., Inc.,* 975 S.W.2d at 764. Thus, the trial court, as well as this Court, has jurisdiction over the case at hand.

## LEGAL AND FACTUAL SUFFICIENCY

In his second issue, James argues the evidence presented at trial was legally and factually insufficient to support the trial

court's findings of fact and conclusions of law. Specifically, James challenges the court's finding of the existence of a partnership because he claims, even assuming the trial court believed Greg's testimony, two of the essential elements of a partnership are missing: an agreement to share losses and participation or the right to participate in control of the business.

## Standard of Review

We review a trial court's findings of fact for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing the sufficiency of the evidence supporting jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). Conclusions of law are reviewed de novo as legal questions. *Hitzelberger v. Samedan Oil Corp.*, 948 S.W.2d 497, 503 (Tex.App.-Waco 1997, writ denied).

In conducting a review for legal sufficiency, we consider the evidence in a light that tends to support the finding of the disputed facts and disregard all evidence and inferences to the contrary. *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex.2001); *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex.2001). If more than a scintilla of evidence exists, the evidence is legally sufficient. *Lee Lewis Constr., Inc.*, 70 S.W.3d at 782. More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence. *Id.* at 782–83.

When considering factual sufficiency challenges to a jury's verdict, courts of appeals must consider and weigh all of the evidence, not just evidence which supports the verdict. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex.1998); *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). A court of appeals can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *See Maritime Overseas Corp.*, 971 S.W.2d at 407; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

The factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547, 549 (1962). The factfinder may believe one witness and disbelieve another, and resolve inconsistencies in testimony. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986). Where enough evidence is before the factfinder that reasonable minds could differ on the meaning of the evidence or the inferences and conclusions to be drawn from the evidence, we may not substitute our judgment for that of the factfinder. *See Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988).

## Texas Revised Partnership Act

█ In his brief, James argues that Greg failed to prove each element necessary for the formation of a partnership and, therefore, the trial court could not have legally found a partnership to exist. However, the case law upon which James relies deals with partnerships which were governed by the Texas Uniform Partnership Act rather than the Texas Revised Partnership Act. After December 31, 1998, the Texas Revised Partnership Act applies to all partnerships and joint ventures.[4]

---

4. James argues that because Greg claims the partnership was formed in 1984, the Revised Act does not apply. Under the statute, prior to January 1, 1999, courts were to apply the Revised Act only to those partnerships formed on or after January 1, 1994 and all partnerships formed before January 1, 1994, that elected to be governed by the Act. Tex.Rev.Civ. Stat. Ann. art. 6132b-11.03(Vernon Supp. 2004). However, after December 31, 1998,

In the case at hand, the trial court expressly found a partnership to have been created between the parties under art. 6132b–2.02 of the Texas Revised Partnership Act and under the Florida Revised Uniform Partnership Act of 1995 which is comparable to the Texas Revised Partnership Act. Greg testified that he believed the partnership was created in 1984, at the signing of the transfer documents. Although the record is unclear as to exactly when the partnership ended, both parties have rental income on their 1999 tax forms and James sold the land sometime in 1999. Accordingly, it appears as though the partnership is governed by the Texas Revised Partnership Act.

### Application

■ Assuming that the McDowells' situation is, indeed, governed by the Texas Revised Partnership Act, we now analyze the evidence presented at trial. The Act defines a partnership as an association of two or more persons to carry on a business for profit as owners, whether the persons intend to create a partnership and whether the association is called a partnership, joint venture, or other name. TEX.REV.CIV. STAT. ANN. art 6132b–2.02(a)(Vernon Supp. 2004). According to the Act, an agreement to share losses by the owners of a business is not necessary to create a partnership. *Id.* at art. 6132b–2.03(c)(Vernon Supp.2004). Contrary to James's assertion that each element of a partnership must be present for such an association to exist, under the Revised Act, no one factor is dispositive. *Id.* at art. 6132b–2.03(b)(Vernon Supp.2004). Instead, a court may consider the following factors indicating that a partnership or joint venture has been formed:

(1) receipt or right to receive a share of the profits of the business;

(2) expression of an intent to be partners in the business;

(3) participation or right to participate in the control of the business;

(4) sharing or agreeing to share:

(A) losses of the business or

(B) liability for claims by third parties against the business; and

(5) contribution or agreeing to contribute money or property to the business.

TEX.REV.CIV. STAT. ANN. art. 6132b–2.03(a)(Vernon Supp.2004); *Dallas Sales Co., Inc. v. Carlisle Silver Co., Inc.,* —— S.W.3d ——, 2003 WL 21877647 (Tex. App.-Waco 2003, no pet. history).

At trial, Greg presented his own testimony, as well as that of his mother Faye McDowell, his wife Amilia McDowell, and certified public accountant Pat Bowers. Both Greg and Faye testified that Greg had indicated a desire to remain in a partnership with his brother following the transfer of the shares. Greg, Faye, and Amilia all claimed to have spoken to James regarding the partnership, and all three understood a partnership to be in existence. Greg also testified that James paid him a portion of the profits from the rental of the land and warehouse and that he (Greg) paid 50% of the costs of repairs and maintenance. In addition, Greg introduced both his and James's tax returns for the years 1992 to 1999. Each return indicated equally split income and expenses from the property. Some of the returns even referred to the income and expenses as the result of the "GEM/JEM joint venture." Pat Bowers testified that, according to the returns, it appeared as though the brothers were holding themselves out as a partnership, splitting income and costs equally.

the statute mandates that all partnerships are governed by the Revised Act. *Id.*

James, on the other hand, testified that he never agreed to form a partnership with Greg, that he either didn't know why the tax forms were filled out as a 50/50 split or that the calculations were the result of a "mistake" made by his accountants. He also claimed to have committed tax fraud by claiming only half of his income from the Trotwood Park property. James also presented the testimony of his ex-wife and ex-accountant Linda McDowell, as well as the testimony of his attorney. Linda, too, claimed not to know why the forms were entitled "joint venture" and to have made several "mistakes" on the tax forms in an attempt to lower James's applicable tax bracket. James's attorney claims the original returns were tax fraud.[5]

As stated above, the factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. See Leyva, 358 S.W.2d at 549. The factfinder may believe one witness and disbelieve another, and resolve inconsistencies in testimony. See McGalliard, 722 S.W.2d at 697. Given the testimony presented, the trial court, who served as the finder of fact in this case, could have believed the majority of the factors indicating the formation of a partnership to exist. Assuming the trial court believed the testimony presented by Greg, it could have found that Greg received a share of the profits, that the tax forms and alleged conversations expressed the brothers' intent to be partners, that the even split of expenses evidenced a sharing of losses, and that Greg contributed money to the business. See TEX.REV.CIV. STAT. ANN. art. 6132b–2.03(a)(Vernon Supp.2004). Although there was no direct evidence of Greg's participation in the control of the

business, and Greg, in fact, argues James hindered his control of the business, Greg's testimony at trial indicates that he was in agreement with James's decisions regarding the "joint venture."

Under the standard of review laid out above, looking at the findings of fact in a light most favorable to the trial court's decision, there is more than a scintilla of evidence to support these findings of fact. See Lee Lewis Constr., Inc., 70 S.W.3d at 782. In addition, weighing all of the evidence and giving deference to the factfinder's judgment of credibility, the findings are not so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. See Maritime Overseas Corp., 971 S.W.2d at 407. Therefore, we hold the findings of fact to be legally and factually sufficient. In addition, we believe the findings support the trial court's conclusions of law. See Hitzelberger, 948 S.W.2d 497 at 503.

### ATTORNEY'S FEES

■ In his third and final issue, James argues that the trial court erred in awarding attorney's fees to Greg without "statutory or contractual authority." Specifically, James contends that Greg has asked for attorney's fees using two arguments: (1) Texas Revised Partnership Act, art. 6132b–7.01, and (2) case law regarding the awarding of attorney's fees on equitable grounds. Rather than citing to Greg's actual petition, James cites this Court to a supplemental letter sent to the trial court by Greg's attorney. In doing so, he fails to mention the only argument actually pled in Greg's First Amended Petition, the awarding of attorney's fees under Chapter

---

**5.** At the time the case went to trial James had filed amended tax returns for several of the years in question.

37 of the Texas Civil Practices and Remedies Code.[6]

■ The trial court did not specify its reasons for awarding attorney's fees to Greg. Under applicable Texas law, a judgment can be affirmed on any theory of law applicable to the case and supported by the record. *See Cathey v. Meyer*, 115 S.W.3d 644, 655 (Tex.App.-Waco 2003, pet. filed). Although Greg argues that he is entitled to attorney's fees under Chapter 37, which is the Declaratory Judgment Act, his First Amended Petition fails to request a declaratory judgment from the court. Thus he cannot recover attorney's fees under that statute. Because Greg could not have recovered attorney's fees under the Declaratory Judgment Act, we reverse the trial court's judgment regarding the issue of attorney's fees.

## CONCLUSION

For the reasons above, we overrule James's first two issues, finding Texas courts to have jurisdiction over the issues at hand and affirming the judgment of the trial court regarding the existence of a partnership. We affirm James's third issue, however, and reverse the trial court's award of attorney's fees to Greg.

---

6. Because Greg does not ask for attorney's fees under the Texas Revised Partnership Act or on equitable grounds in his petition, we do not address these issues. Additionally, because James argues generally that Greg is not entitled to attorney's fees under any theory because there is no applicable statute or contract authorizing such an award, we choose to address Greg's request under Chapter 37 in spite of James's failure to raise this specific issue on appeal.