Affirmed and Opinion filed April 25, 2006









Affirmed
and Opinion filed April 25, 2006.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00363-CV

____________

 

TRUTEC OIL AND
GAS, INC. D/B/A MARTINDALE ASSOCIATES LIMITED AND TRUTEC INVESTMENT SERVICES
COMPANY LIMITED, Appellants

 

V.

 

WESTERN ATLAS
INTERNATIONAL, INC., WESTERN ATLAS, INC., BRASS EXPLORATION UNLTD., WESTERN
GEOPHYSICAL CO., LTD., WI, INC., BAKER HUGHES INCORPORATED, BRASSCO (CAYMAN)
LIMITED, BRASS HOLDING LIMITED, AND JP MORGAN CHASE BANK, Appellees

 



 

On Appeal from the 152nd
District Court

Harris County, Texas

Trial Court Cause No. 00-16476

 



 

O P I N I O N








This appeal arises from an agreement
relating to a Nigerian oil prospecting license, which later became an oil
mining lease.  Appellants Trutec Oil and
Gas, Inc., d/b/a Martindale Associates Limited and Trutec Investment Services
Company Limited (ATrutec@) sued appellees (AWestern Atlas et
al.@)[1]
and others for breach of contract, breach of fiduciary duty, conversion,
tortious interference with contract, and conspiracy, and sought an accounting,
a constructive trust, and a declaratory judgment.  In the court below, Western Atlas et al.,
asserted that Trutec=s lawsuit claimed an interest in Nigerian
mineral interests and, thus, claims an interest in Nigerian real property.  Agreeing with Western Atlas et al. about the
nature of Trutec=s suit, the trial court dismissed
Trutec=s claims for lack
of subject matter jurisdiction.  On
appeal, Trutec contends the trial court erred in granting the motion to
dismiss, because its lawsuit involves Nigerian realty only tangentially.  Trutec characterizes its lawsuit as one
involving personal property, and contends that the rights granted by the oil
prospecting license are a privilege that conveys no interest in real
property.  We affirm because Trutec=s lawsuit required
the trial court to determine if Trutec had an ownership interest in real
property located in Nigeria and, therefore, outside the court=s jurisdiction.

A.        Factual
Background.

Trutec claims its interest arose from dealings with Moni Pulo
Limited, a Nigerian company.  In 1992,
Moni Pulo was granted an oil prospecting license, denominated AOil Prospecting License 230,@[2] to explore and prospect for oil in certain areas
offshore Nigeria by the Federal Republic of Nigeria.  Over time, Moni Pulo and Trutec entered into
agreements relating to Oil Prospecting License 230; those agreements later
became the focus of this lawsuit.  The
relationship among Moni Pulo, Trutec, and Western Atlas et al. is recounted in
detail in this court=s earlier opinion in Moni Pulo Ltd. v. Trutec Oil &
Gas, Inc., 130 S.W.3d 170 (Tex. App.CHouston [14th Dist.] 2003, pet.
denied), in which we held that the trial court lacked personal jurisdiction
over Moni Pulo and dismissed the company from the case.  We will limit our discussion here to the
facts relevant to our disposition of this appeal.








In 1994, Moni Pulo and Trutec[3]
entered into a AConsultancy Agreement@ in which Trutec agreed to perform
certain services relating to Oil Prospecting License 230 in exchange for A10% (Ten percent) of equity and 10%
of buying in fees realised in Oil Prospecting License 230 and any leases
granted therefrom and any extensions thereof.@ 
According to Trutec, it was to provide a $1 million Asignature bonus@ payable to the government and to
help find a Atechnical partner@ to oversee development.  Two years later, in January 1996, Moni Pulo
and Trutec entered into a second consultancy agreement that allegedly
superseded the 1994 agreement.  This
second agreement allegedly reduced Trutec=s interest to A6% . . . of [the] equity shares@ of Moni Pulo.  








Shortly after this second consultancy agreement was executed,
Moni Pulo entered into a Joint Venture Agreement with appellee Brass
Exploration Unltd., a Nigerian unlimited-liability company.[4]  In this joint venture agreement, Moni Pulo,
as AOwner,@ and Brass, as ATechnical Partner,@ agreed to explore and develop Oil
Prospecting License 230, and Moni Pulo assigned to Brass a 40% AParticipating Interest@ in all hydrocarbon exploration, development,
production and sales from Oil Prospecting License 230.[5]  Among other things, the joint venture
agreement provided that, upon the fulfillment of certain conditions, Brass
would pay $845,455 to Trutec as Afull and final payment@ for Aservices rendered@ to Moni Pulo.  Moni Pulo and Brass also entered into an
Operating Agreement to define their rights and obligations with respect to
operations under Oil Prospecting License 230. 
The exploratory operations were apparently successful, and the area
covered by Oil Prospecting License 230 was converted to an oil mining lease,
Oil Mining Lease 114.

Believing that Moni Pulo had not kept its end of the bargain
agreed to in the first consultancy agreement, Trutec Investment Services filed
suit in Nigeria against Moni Pulo, Brass, Western Atlas International, Inc. and
WI, Inc.  In that suit, Trutec argued it
was entitled to a A10% . . . undivided participating interest in Block 230
granted to [Moni Pulo] . . . .@  However, Trutec=s representative apparently refused
to continue to participate in the trial and left the country.  Moni Pulo, 130 S.W.3d at 174.  Consequently, the Nigerian court dismissed
the suit.  Id.  

But the controversy did not end there.  While the Nigerian case was still pending,
Trutec filed this suit in Harris County against the same defendants and others,
and alleged claims similar to those made in the Nigerian case.  Moni Pulo filed a special appearance, which
the trial court denied.  On appeal, this
court dismissed Moni Pulo from the suit based on lack of personal jurisdiction.
Moni Pulo, 130 S.W.3d at 181.

Trutec made numerous claims against the remaining defendants,
including breach of contract, conversion, tortious interference and unfair
business practices, breach of fiduciary duties, and conspiracy.  Trutec sought actual and exemplary damages,
an accounting, a constructive trust, and declaratory relief.  Appellees Western Atlas International, Inc.,
Western Atlas, Inc., Brass Exploration Unltd., Western Geophysical Co., Ltd,
WI, Inc., Baker Hughes Incorporated, Brassco (Cayman) Limited, Brass Holding
Limited, and JP Morgan Chase Bank (Chase Bank of Texas, N.A.) moved to dismiss
Trutec=s claims against them for lack of
subject matter jurisdiction.  On January
14, 2004, the trial court granted the motion to dismiss.  Trutec filed a motion for reconsideration,
which was overruled by operation of law. 
This appeal followed. 

B.      Trutec=s Suit Requires
the Adjudication of Interests in Real Property.








Though our Moni Pulo opinion
involved a different issue than this appeal, ironically, a footnote contained
in that opinion has taken center stage in this appeal.  We observed in the footnote that ATexas law would
view Trutec=s suit as a claim for a mineral
interest[], and thus title to land,@ and so ATrutec=s attempt to
recast it as a mere suit for damages would be disregarded.@  See 130 S.W.3d at 180 n.39 (citations
omitted).  In three issues, Trutec
challenges this dicta by asserting that the district court had subject matter
jurisdiction over its claims because (1) Trutec=s lawsuit does not
require the adjudication of title to foreign realty, (2) Trutec=s claims involve
personal property, and (3) the rights granted by Oil Prospecting License 230
are a privilege rather than an interest in real property.  Finding that our previous dicta is accurate
and resolves this appeal, we overrule Trutec=s challenges.  We explain below.

1.       Texas
Courts Cannot Adjudicate Interests in Real Property Located Outside the State;
Interests in Oil and Gas Leases are Interests in Property.

Texas courts may not adjudicate title to realty in another
state or country; they do not have subject matter jurisdiction over property
outside the state.  Holt v. Guerguin,
106 Tex. 185, 163 S.W. 10, 12 (1914); Kelly Oil Co., Inc. v. Svetlik,
975 S.W.2d 762, 764 (Tex. App.CCorpus Christi
1998, pet. denied); Carmichael v. Delta Drilling Co., 243 S.W.2d 458,
459B60 (Tex. Civ. App.CTexarkana 1951,
writ ref=d).  Of significance here, interests in oil and
gas rightsCsuch as working interests and royalty
interests in oil and gas leasesCare considered
interests in real property.  See MCEN
1996 P=ship v. Glassell, 42 S.W.3d 262,
263 (Tex. App.CCorpus Christi 2001, pet. denied) (citing Renwar
Oil Corp. v. Lancaster, 154 Tex. 311, 276 S.W.2d 774, 776 (1955); State
v. Quintana Petroleum Co., 134 Tex. 179, 133 S.W.2d 112, 114B15 (1939)); Carmichael,
243 S.W.2d at 459B60; Kelly Oil Co., Inc., 975 S.W.2d
at 764.  As a result, the general
prohibition against determining rights in real property located in other states
or countries extends to rights in oil and gas leases in other states or
countries.  See Kelly Oil, 975
S.W.2d at 764; Miller v. Miller, 715 S.W.2d 786, 788B89 (Tex. App.CAustin 1986, writ
ref=d n.r.e.); Carmichael,
243 S.W.2d at 459B60.

 

 








2.       Trutec=s Response for Why
the General Rule Does Not Apply to Its Suit.

Trutec acknowledges this general
prohibition against Texas courts adjudicating interests in non-Texas property,
but maintains this general rule does not apply here.  It contends that its breach of contract,
tort, and other claims are only Atangentially@ related to real
property, so that the trial court had jurisdiction over its claims and thus
erred in dismissing its lawsuit.  Trutec
argues that its claims were brought to enforce in personam, or Atransitory@ rights that may
be adjudicated in a Texas court.  Trutec
contends Western Atlas et al. has implicitly mischaracterized Trutec=s suit as an in
rem, or Alocal@ action, andCwithout expressly
saying soCrelied on the Alocal action
doctrine@ to dismiss Trutec=s claims.  Trutec argues that the local action doctrine
applies only when the asserted claims are limited strictly to the adjudication
of foreign title.  See Tex.
& Pac. Ry. Co. v. Gay, 86 Tex. 571, 26 S.W. 599, 605 (1894) (A[W]hen the suit is
strictly local, the subject-matter is specific property, and the relief, when
granted, is such that it  must act
directly upon the subject-matter, and not upon the persons of the defendant,
the jurisdiction must be exercised in the state where the subject-matter is
situated.@) (citations omitted); see also Hayes
v. Gulf Oil Corp., 821 F.2d 285, 286B90 (5th Cir. 1987)
(tracing development of local action doctrine and affirming its continued
viability in Texas law); Keller v. Millice, 838 F. Supp. 1163, 1169B73 (S.D. Tex.
1993) (examining history of local action doctrine and discussing distinctions
between local and transitory actions). 
We will consider these arguments below.

3.       Standard
of Review.








Appellants= motion to dismiss
is the functional equivalent of a plea to the jurisdiction. Anderson v. City
of San Antonio, 120 S.W.3d 5, 7 (Tex. App.CSan Antonio 2003,
pet. denied).  A plea to the jurisdiction
challenges the trial court=s authority to
determine the subject matter of a cause of action.  Bland Indep. Sch. Dist. v. Blue, 34
S.W.3d 547, 554 (Tex. 2000).  Subject
matter jurisdiction raises a question of law, which we review de novo. See
Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998).  In deciding a plea to the jurisdiction, a
court must not weigh the claims= merits and should
consider only the plaintiff=s pleadings and
the evidence pertinent to the jurisdictional inquiry.  County of Cameron v. Brown, 80 S.W.3d
549, 555 (Tex. 2002).  When considering a
trial court=s order on a plea to the jurisdiction, we
first review the plaintiff=s pleadings.  We construe the pleadings in the plaintiff=s favor and look
to the pleader=s intent. 
Id. 

As we explain below, we are of the opinion
that the factors relevant to the outcome of this plea to the jurisdiction
reflect that Trutec is seeking an interest in real property.  At its core, Trutec=s complaint is
that it had an interest in the oil producing license (the functional equivalent
of an oil and gas lease) and therefore that it should have an interest in Oil
Mining Lease 114 (also equivalent to an oil and gas lease).

4.       Trutec=s Pleadings and
Evidence Pertinent to Jurisdiction.

a.       Alleged
Factual Misdeeds.

To determine the nature of Trutec=s claims, we turn to Trutec=s last live pleading, and the relevant
evidence in the record.  In its petition,
Trutec alleges a litany of misdeeds, including the following:

!                  
AThis case concerns, inter alia, contracts,
tortious interference and the wrongful taking of Plaintiffs= interest in hydrocarbon production on oil-producing
properties in Nigeria  through breach of
contracts, breaches of fiduciary and other duties, manipulation and conspiracy,
among other things, and the conversion of Plaintiffs= property rights and interests.@

!                  
APlaintiffs entered into an agreement . . . [with Moni
Pulo] . . . to retain [Oil Prospecting License] 230 . . . and to explore and
develop the property. . . . Moni Pulo conveyed to Plaintiffs a 10% interest in
all oil and hydrocarbons produced from block [Oil Prospecting License]
230.  Defendants acknowledged and were
aware of the arrangement and terms of the agreement in which Plaintiffs
obtained their interests in [Oil Prospecting License] 230 and the hydrocarbon
production derived from it . . . .@

!                  
AThroughout the process of selecting and procuring the
technical joint venture partner for development of [Oil Prospecting License]
230, [Defendants= agents] made numerous agreements, representations and
promises about recognizing Plaintiffs= 10% in
[Oil Prospecting License] 230, and assuring Plaintiffs that [these Defendants]
would ensure that such interests would be preserved and agreed that Plaintiffs
would be paid in full if, as, and when production of hydrocarbons commenced.@








!                  
AUnbeknownst to Plaintiffs, Defendants entered into and
participated in a scheme and conspiracy to deprive Plaintiffs of their
interests in [Oil Prospecting License] 230.@

!                  
A[P]roduction of hydrocarbons in commercial quantities
on [Oil Prospecting License] 230 commenced in March 1999.  Defendants entered into a lease ([Oil Mining
Lease] 114) covering production of hydrocarbons on [Oil Prospecting License]
230.  The failure of the Defendants to
pay Plaintiffs on and after March 1999 their 10% caused Plaintiffs a legal
injury and damage for which this suit seeks redress.@

!                  
AAs set out above, Defendants contracted to pay
Plaintiffs 10% of all hydrocarbons, if, as, and when produced from [Oil
Prospecting License] 230.  Defendants
breached their contracts in March 1999 and thereafter by failing to pay
Plaintiffs their share of the revenue from the hydrocarbons each month and such
breach continues.@

!                  
A[B]eginning in March 1999, Defendants illegally and
wrongfully stole and converted Plaintiffs=
interest and property rights to [Oil Prospecting License] 230 and the
hydrocarbons produced therefrom.@

!                  
ADefendants engaged and continue to engage in an
illegal civil conspiracy to take from Plaintiffs monies, property interests,
and compensation duly owed to Plaintiffs, as well as owing to Plaintiffs under
the terms of an agreement and long-term relationship relating to hydrocarbon
production on [Oil Prospecting License] 230. . . . Plaintiffs have suffered
damages beginning in March 1999 and continuing through time of trial as a
proximate result of Defendants= conspiracy.@

!                  
APlaintiffs are entitled . . . 
to a declaration from this court that Plaintiffs are entitled to 10% of
all revenue and production from [Oil Prospecting License] 230/[Oil Mining
Lease] 114, in the future.@

Although some of the petition=s language seeks a recovery of
proceeds from the sale of production, Trutec=s core complaint throughout is that
it has been wrongfully deprived of its interest in Oil Prospecting License 230,
the oil producing license, and, subsequently, its interest in Oil Mining Lease
114.  As stated in Trutec=s factual background:  AMoni Pulo conveyed to Plaintiffs a
10% interest in all oil and hydrocarbons produced from block Oil Prospecting
License 230@ and A[t]he failure of the Defendants to
pay Plaintiffs on and after March 1999 their 10% caused Plaintiffs a legal
injury and damage for which this suit seeks redress.@

 

 








b.       The
Causes of Action.

These factual underpinnings, claiming deprivation of the
functional equivalent of an interest in an oil and gas lease, and, thus, the
deprivation of a property interest are mirrored in Trutec=s causes of action.  

!                  
Breach of Contract:  The breach of contract claim is based on an
alleged oral promise by the Western Atlas et al. to recognize Moni Pulo=s alleged transfer of ten percent
of its interest to Trutec.[6]


!                  
Conversion of Hydrocarbons:  Trutec=s claim for conversion of
hydrocarbons is likewise based on a claimed ownership of mineral
interests.  To prove that Western Atlas
et al. converted the hydrocarbons, Trutec must establish that it has title to
the property converted, that is, the oil and gas produced from Oil Prospecting
License 230 and Oil Mining Lease 114.  See
Bosworth v. Gulf Coast Dodge, Inc., 879 S.W.2d 152, 158 (Tex. App.CHouston [14th Dist.] 1994, no writ)
(conversion claim requires plaintiff to have ownership rights).  To have title to the oil and gas, Trutec  necessarily must have an ownership interest
in Oil Prospecting License 230 and Oil Mining Lease 114.  

!                  
Tortious Interference:  Trutec=s tortious interference claim also
fails without a transfer of the ten percent ownership of the lease.  Tortious interference requires the existence
of a contract, which here was the conveyance of mineral interests.  See Roof Systems, Inc. v. Johns Manville
Corp., 130 S.W.3d 430, 435 (Tex. App.CHouston [14th Dist.] 2004, no pet.).  Without a contract conveying the mineral
interests, the appellees could not have interfered with Trutec=s contract and damaged Trutec.  

!                  
Breach of Fiduciary Duty:  The breach of
fiduciary duty claim relies on the same set of facts as the breach of contract
action, but additionally alleges the appellees acted as fiduciaries and
breached fiduciary duties to Trutec.[7]








!                  
Declaratory Action: 
Trutec=s request for declaratory relief seeks a
declaration that Trutec is entitled to future production from the oil field,
and is thus directly dependent upon its ownership rights.

c.       The
1994 Consultancy Agreement.

The 1994 Consultancy Agreement also
reflects the transfer  of an interest in
oil and gas rights.  That agreementCthe original
agreement Trutec contends was breached and from which its interest and property
rights allegedly flowCprovides that Trutec is to receive A10% (Ten percent)
of equity and 10% of buying in fees realised in Oil Prospecting License 230 and
any leases granted therefrom and any extensions thereof.@  Thus, Trutec was to hold a ten percent
interest in Oil Prospecting License 230, and a ten percent interest in future
leases.  It received none of these
interests and now claims what it believes it is due.

d.       The
License.

The Oil Prospecting License also is before us.  It grants Moni Pulo the right Ato prospect for petroleum in, upon
and under the lands described in the schedule hereto . . .@ and states that the license is
subject to the Petroleum Act of 1969 and the regulations thereunder.  Under the Petroleum Act and its regulations,
the holder of an oil prospecting license like Oil Prospecting License 230 is
granted Athe exclusive right to explore and
prospect for petroleum within the area of his licence@ and Amay carry away and dispose of
petroleum won during prospecting operations . . . .@ 
Petroleum Act, (1969) Cap. 350, 12644, 12656 (Nigeria) (the AAct@). 
The Act defines Aprospect@ as meaning to Asearch for by all geological and
geophysical methods, including drilling and seismic operations.@ 
Id. at 12654.  The holder
of an oil prospecting license who satisfies the conditions imposed upon him by
law and who discovers oil in commercial quantities may be granted an oil mining
lease (which occurred here when Oil Prospecting License 230 was converted to
Oil Mining Lease 114).  See id. at
12656.

 

 








5.       The
Most Analogous Case Law.

Considering these pleadings and evidence,
we find the facts and circumstances here most analogous to those in Kelly
Oil Co., Inc. v. Svetlik, 975 S.W.2d at 763B64, and Carmichael
v. Delta Drilling Co., 243 S.W.2d at 459B60.  In Kelly Oil, Svetlik received an
assignment of an overriding royalty interest in some oil and gas leases in
Mississippi.  975 S.W.2d at 763.  However, he never received the fruits of the
lease because the defendants claimed the leases were terminated by cessation of
operations clauses; apparently, one of the production lines ruptured, causing
production to cease until its repair. 
After being informed the leases were terminated, a new production group,
Kelly Oil, negotiated new leases, conditioned on the termination of the leases
under which Svetlik had his royalty interest. 
Kelly Oil began to produce oil and gas from the leases, and Svetlik
sued.  The court found that Athe determinative
issue in the lawsuit involves an adjudication of interests in real property
located outside of the State of Texas . . .@ because Aa royalty interest
in an oil and gas lease is an interest in real property . . . .@  Id. at 764.  Even though Svetlik sued for breach of
contract and conversion, Athe validity of Svetlik=s claims hinged
upon a finding that the original oil and gas leases through which Svetlik
claimed, were still in existence.@  Id. 
In short, because interests in oil leases are synonymous with interests
in real property, and Texas courts have no authority to adjudicate interests in
real property outside Texas, the court had no authority to adjudicate interests
in Mississippi oil leases.  See id.








The same conclusion was reached in Carmichael
v. Delta Drilling.  In that case,
Delta Drilling supplied former employees with two drilling rigs to prospect for
oil and gas in Illinois, Indiana, and Kentucky. 
243 S.W.2d at 458.  Delta Drilling
and the former employees signed a joint operating agreement providing that the
two parties would divide the production profits.  Later, the former employees sued, claiming
that they were not paid their share and that Delta entered into an oral
agreement to convey an undivided one-fourth interest in a certain lease in
Indiana.  Id. at 459.  The former employees claimed that their suit
was not for title to the lease, but instead was for an accounting of the oil
produced from the lease and specific performance to convey the interest in the
lease to them.  They claimed twenty-five
percent of the value of the  oil sold
from the lease.  Delta Drilling responded
that the real nature of the suit was to determine title to the lease.  Id. at 459B60.  The Carmichael court held that the
former employees had no claim to the value of twenty-five percent of the oil
unless they were entitled to a one-fourth interest in the lease, which in turn
required a finding of who owned the lease. 
Id. at 460.  Thus, the
court held it had no subject matter jurisdiction, because an interest in an oil
and gas lease is an interest in property, the lease was in Indiana, and Texas
courts have no Ajurisdiction to adjudicate title to
land[/leaseholds] in another state.@  Id.

We perceive only two differences between
this appeal and Kelly Oil and Carmichael:  (1) Kelly Oil and Carmichael
involved oil and gas leases in the continental United States, while this appeal
involves an oil and gas lease in Nigeria; and (2) the Kelly Oil and Carmichael
leases were on land, while the lease in this appeal is in waters off the
Nigerian coast.  Otherwise, the issues
are the same.  Trutec claims it received
a ten percent interest in an oil and gas lease but has not seen any of the
fruits of that ten percent interest. 
This is precisely what the plaintiffs and Kelly Oil and Carmichael
insisted.  See Kelly Oil, 975
S.W.2d at 764B65; Carmichael, 243 S.W.2d at 459B60.

Consequently, having reviewed the
pleadings and the evidence pertinent to the jurisdiction, we hold that Trutec=s suit requires
the adjudication of property interests outside the State of Texas.  The trial court lacked jurisdiction to hear
the case and correctly dismissed it for lack of subject matter jurisdiction.  See Kelly Oil, 975 S.W.2d at 764;
Carmichael, 243 S.W.2d at 460; see also Miller, 715 S.W.2d at 786B89 (holding that
suit to determine whether title to mineral rights in Oklahoma passed through a
will required adjudication of title to Oklahoma property which Texas courts
have no jurisdiction to consider); Hayes, 821 F.2d at 286B90 (holding Texas
district court lacked subject matter jurisdiction over lessee=s action against
assignee to terminate assignee=s interest in
Colorado oil and gas lease).

 








C.      Trutec=s
Protestations to the Contrary.

Although we find that the facts alleged in
the pleadings, the causes of action, and the contract signal claims based on a
property interest, Trutec steadfastly maintains that the Aprincipal relief
[it] requested was the trial court=s determination of
issues arising from an agreement . . ., not issues specific to Nigerian real
property.@ 
And, to provide that relief, the trial court needed only to Aconstrue the terms
of the agreement and to consider Appellees= actions related
to the agreement.@ 
Trutec relies primarily on two cases, Hartman v. Sirgo Operating, Inc.,
863 S.W.2d 764  (Tex. App.CEl Paso 1993, writ
denied), and McDowell v. McDowell, 143 S.W.3d 124 (Tex. App.CSan Antonio 2004,
pet. denied), which it contends are on point. 
We are of the opinion that the situations in Hartman and McDowell
are fundamentally different from the facts in this appeal.

1        The
Cases Trutec Cites in Opposition to Kelly and Carmichael Involve Different
Issues.

In Hartman, Sirgo and Hartman=s representative
entered into a letter agreement in 1990 in which Sirgo agreed to obtain an oil
and gas property owned by ARCO that would be exchanged for Hartman=s interest in an
oil producing property in New Mexico. 
When the agreement=s promises were not fulfilled, Sirgo
sought a declaration of the parties= rights under the
1990 letter agreement.  The Hartman
court itself succinctly chronicles the differences between Hartman, on
the one hand, and Carmichael and Kelly, on the other, pointing
out that Hartman involved neither specific performance of an agreement
to convey mineral rights nor a determination of ownership in mineral
rights.  Hartman, 863 S.W.2d at
766B67.  

Unlike the suit in
Carmichael v. Delta Drilling Co., this suit was not filed seeking
specific performance of the parties= agreement.  And unlike Miller v. Miller, 715
S.W.2d 786 (Tex. App.CAustin 1986, writ ref=d n.r.e.), this
suit did not seek to determine ownership of mineral rights located in another
state.  The trial court had jurisdiction
to determine if certain conditions precedent had been met and if the contract
was valid and if the parties= obligations were
valid and enforceable.

Id. at 767.








Trutec=s second case, McDowell,
similarly involves different issues. 
There, the court considered a dispute between brothers over the
formation of a partnership to purchase real property located in Florida.  McDowell, 143 S.W.3d at 126B27.  The fraternal dispute was sparked when one of
the brothers sold the business and its assetsCwhich included
real estateCwithout giving the other brother the fifty
percent he claimed he was due.  Thus, the
central issue was not an interest in realty, but an interest in the partnership
itself and ultimately a part of the proceeds of the sale of the partnership=s assets.  Id. at 127.  The court of appeals held that the trial
court had subject matter jurisdiction because the central issue in the case was
the existence of a partnership, not title to land.  Id. at 127. 

Other cases cited by Trutec are likewise
distinguishable.  See Finder v. O=Connor, 615 S.W.2d 283 (Tex. Civ. App.CDallas 1981, writ dism=d) (venue case in which principal
relief sought was not for recovery of an interest in land but to establish a
joint venture); Miller v. Howell, 234 S.W.2d 925 (Tex. Civ. App.CFort Worth 1950, no writ) (venue case
in which review of petition reflected suit was an equitable proceeding for a
partnership accounting.); Sax v. Sax, 294 F.2d 133 (5th Cir. 1961)
(Florida suit to set aside allegedly fraudulent supplemental trust agreement
held to be an in personam, transitory suit to undo a fraudulent conveyance of
out-of-state property).[8]

2.       This
Suit Does Not Involve a Mere Claim of a Right to Oil Severed From Realty.








In a second attempt to keep its claims
from being labeled claims to interests in out-of-state property, Trutec
contends that the trial court erred in dismissing its suit because its claims
relate to personal property rather than to real property.  Specifically, Trutec contends its claims
relate to oil severed from realty.[9]


Trutec asserts that the interest it seeks
is a claim for personal property because it sued for production and proceeds
from the oil severed from the ground, which is personal property.  Trutec points to certain language in some of
the documents and in its petition referencing hydrocarbon production and proceeds,
and argues that when its petition is reviewed Aliberally and as a
whole, and its allegations accepted as true,@ it sought an
interest in personal propertyCthe production and
proceeds derived from Oil Prospecting License 230, which it contends Western
Atlas et al. converted.

For support, Trutec cites established case
law standing for the proposition that Aonce severed from
the realty, gas and oil, like other minerals, become personal property.@  See, e.g., Humble Oil & Ref. Co. v.
West, 508 S.W.2d 812, 817 (Tex. 1974); see also Amoco Prod. Co. v. Wood,
113 S.W.3d 462, 466 (Tex. App.CTexarkana 2003, no
pet.); Roberts v. Ricane Enters., Inc., 930 S.W.2d 157, 165 (Tex. App.CAmarillo 1996,
writ denied); Phillips Petroleum Co. v. Mecom, 375 S.W.2d 335, 339 (Tex.
Civ. App.CAustin 1964, no writ).  Trutec also cites cases providing that
proceeds from the sale of oil or oil produced and severed from the land may be
converted.  See, e.g., Santanna
Natural Gas Corp. v. Hamon Operating Co., 954 S.W.2d 885, 892 (Tex. App.CAustin 1997, pet.
denied); W.B. Johnson Drilling Co. v. Lacy, 336 S.W.2d 230, 233 (Tex.
Civ. App.CEastland 1960, no writ)








But, even if it is correct that minerals,
once severed, become personal property, that is 
not the issue in this suit.  Here,
Trutec has no claim to the oil either in the ground or removed from the ground
unless it owns the real property mineral rights.  The same is true for its conversion
claim.  Before any of Trutec=s claims for
damages may be evaluated, a court must determine Trutec=s ownership
interest in Oil Prospecting License 230 and in the subsequent oil mining
lease.  Because the interests are located
in Nigeria, not Texas, a Texas court has no authority to consider this issue,
and we overrule Trutec=s second issue.

3.       The
Rights Granted by the License are not a Privilege, but are Similar to Rights
Conveyed by an Oil and Gas Lease.

In its third and last issue, Trutec tries again to
characterize its claims as non-real property interests.  It contends that another reason the trial
court erred in dismissing its suit was that the rights granted by a license are
a privilege, not an interest in property. 
Specifically, Trutec contends a license is merely a privilege to go on
land for a certain purpose, while a lease confers an interest in or title to
property.[10]


We also find this argument regarding licenses
unconvincing.  It requires us to suspend
the realities of this case and to consider instead situations quite unlike this
one.  To illustrate, Trutec cites several
Texas cases in which licenses are distinguished from real property
interests.  They involve the following: 

!                  
a food and
beverage concession in an airport, H.E.Y. Trust v. Popcorn Express Co.,
35 S.W.3d 55, 58 (Tex. App.CHouston [14th Dist.] 2000, pet. denied) (holding food
and beverage concession contract with airport was a license and not a lease of
real estate for purposes of the Real Estate License Act);

!                  
an access license
versus an easement, Samuelson v. Alvarado, 847 S.W.2d 319, 323 (Tex.
App.CEl Paso 1993, no writ) (distinguishing an easement
from an Aaccess license@ in
dispute over an easement);

!                  
a hunting lease
granting the right to hunt, Digby v. Hatley, 574 S.W.2d 186, 190 (Tex.
Civ. App.CSan Antonio 1978, no writ) (stating that hunting Alease@ was more in the nature of a license granting a right
or privilege to hunt on property that conveys no interest in or title to the
property concerned); and 

!                  
a
license for restaurant customers to use an adjoining owner=s driveway, Joseph v. Sheriffs= Ass=n, 430 S.W.2d 700, 703B04 (Tex. Civ. App.CAustin 1968, no writ) (holding that
under facts of case appellant acquired only a license for restaurant customers
to use driveway on adjoining property rather than an easement). 








None of these situations is remotely similar to the Nigerian
Government=s license to prospect for oil.  

To repeat, that license essentially was an oil and gas lease,
allowing the producer to drill for oil and to obtain a mining lease if
sufficient quantities of oil were discovered and successfully produced.

In light of these facts, we decline Trutec=s invitation to compare the Nigerian
government=s broad grant of authority to
prospect for oil with a limited right of access to use property for activities
such as a food and beverage concession, hunting, or use of a driveway.  We do not find the rights granted under the
Petroleum Act in any way Aanalogous to those Texas cases relating to the contractual
rights of owners of coin-operated vending machines@ as was the situation in H.E.Y.
Trust v. Popcorn Express Co., relied on by Trutec.  See 35 S.W.3d at 58.  

We overrule Trutec=s third issue.

D.      Conclusion

In summary, although Trutec=s brief was
well-crafted and Trutec did its best to distance its suit from the general rule
that Texas courts cannot adjudicate interests and title in non-Texas real
property, we find that the general rule applies to Trutec=s claims.  Trutec=s lawsuit required
the trial court to determine if Trutec had an ownership interest in real
property located outside the State of Texas. 
The trial court correctly concluded it had no jurisdiction to resolve
the issues Trutec raised in its lawsuit. 
We overrule Trutec=s issues and affirm the trial court=s judgment.

 

/s/      Wanda McKee Fowler

Justice

 

 

Judgment
rendered and Opinion filed April 25, 2006.

Panel
consists of Justices Fowler, Edelman, and Guzman.











[1]  We will refer
to appellees collectively as AWestern Atlas et al.@





[2]  In the
documents, Alicense@ is
spelled Alicence,@ but in
the interest of consistency and uniformity we will spell Alicense@ the
standard way throughout this opinion.





[3]   The 1994
Consultancy Agreement reflects that it is between Moni Pulo and Trutec
Investment Services Company Limited, a Nigerian company, Ain association with its overseas Technical associate@ Martindale Associates Limited.  As a result of a merger, appellants are now
Trutec Oil and Gas, Inc. /d/b/a Martindale Associates Limited and Trutec
Investment Services Company Limited. 





[4]  The joint
venture agreement between Brass Exploration and Moni Pulo reflects that Brass
is a Nigerian subsidiary of appellees WI, Inc. and Western Atlas International,
Inc.  Western Atlas and Baker Hughes
merged in 1998.





[5]  In Nigeria,
the government owns all oil and gas resources, and no interest granted by the
government may be assigned without the government=s
approval.  Although the Nigerian
government approved the assignment to Brass, it is undisputed that Trutec has
never sought or obtained the Nigerian government=s
approval for any assignment to it.  See
Moni Pulo, 130 S.W.3d at 174. 





[6]  At oral argument, Trutec argued
that the specific issue bestowing the trial court with subject matter
jurisdiction was whether this oral contract was breached, and Trutec=s contract with Moni Pulo was
irrelevant to this determination. 
However, if Trutec was not given ten percent of the mineral interest,
then it has no breach of contract claim. 






[7]  Trutec also alleges Abreach of constructive trust@ and seeks an accounting; but a
constructive trust is not a cause of cation, only a remedy for breach of
fiduciary duty.  See Grace v.
Zimmerman, 853 S.W.2d 92, 97 (Tex. App.CHouston [14th Dist.] 1993, no writ).  Similarly, Trutec alleges conspiracy, but a
defendant=s liability for conspiracy depends
on his participation in some underlying tort for which the plaintiff seeks to
hold at least one of the named defendants liable.  See Tilton v. Marshall, 925 S.W.2d
672, 681 (Tex. 1996).  





[8]  Similarly, in other cases cited by
Trutec, the issue was not who owned the property or an interest in the
property, but whether a party=s property could be turned over as a remedy to enforce a
personal obligation.  See Lozano v.
Lozano, 975 S.W.2d 63, 68 (Tex. App.CHouston [14th Dist.] 1998, pet. denied) (Texas court could
order turnover of real property in Mexico to satisfy judgment); Reeves v.
Fed. Sav. & Loan Ins. Corp., 732 S.W.2d 380, 382 (Tex. App.CDallas 1987, no writ) (Texas court
could order turnover of indicia of ownership of property in Portugal to
receiver).





[9]  Trutec=s argument that its claims relate to an interest in a
partnership was not raised below, and thus is waived.





[10]  Trutec also
takes the position that it is immaterial that the oil prospecting license, Oil
Prospecting License 230, was converted to the oil mining lease, Oil Mining
Lease 114Cwhich it concedes is an interest in real propertyCbecause, as it has argued throughout its brief, the
presence of real property is not dispositive of this suit.