Ida Marie STARK, et al., Appellants,

v.

Eunice R. BENCKENSTEIN,
et al., Appellees.

No. 09–03–225 CV.

Court of Appeals of Texas,
Beaumont.

Submitted Oct. 1, 2004.

Decided Dec. 30, 2004.

L. Clayton Burgess, Lafayette, LA, Louis Dugas, Orange, for appellants.

Louis Dugas, Jr., for William H. Stark, III, Randall Stark and Lynn Marie Stark Barras.

John Cash Smith, Bush, Lewis & Roebuck, Tommy Gunn, Gunn & Parkhurst, LLP, Orange, Kurt M. Andreason, Elizabeth C. Turley, Mehaffy Weber, PC, Kevin M. Jordan, Sheldon, Jordan & Dunham, LLP, Beaumont, Thomas L. Hanna, Thomas L. Hanna, PC, Nederland, Larry C. Hunter, Hunter Burch, LLP, Vidor, for appellees.

Before McKEITHEN, C.J., BURGESS and HILL *, JJ.

## OPINION

DON BURGESS, Justice.

This suit arises from claims related to the estates of three decedents—H.J. Lutcher Stark ("Lutcher"), and two of his wives, Nita Hill Stark ("Nita"), and Nelda C. Stark ("Nelda"). Appellants, who are heirs of William H. Stark II (one of Lutcher's and Nita's sons), contest the trial court's grant of summary judgment against them in a declaratory judgment action. The appellants are Ida Marie Stark, individually and as independent executor of the Estate of William H. Stark II, Deceased, William H. Stark III, Randall Hill Stark, and Linda Marie Stark Barras. The appellees are Eunice R. Benckenstein, Walter G. Riedel III, and Roy Wingate, each individually and as independent co-executors of the estate of Nelda C. Stark, deceased (the "Estate");

---

* The Honorable John Hill, sitting by assignment pursuant to TEX. GOV'T CODE ANN.

§ 74.003(b) (Vernon Supp.2004).

Eunice R. Benckenstein, as successor independent executrix of the estate of H.J. Lutcher Stark, deceased; the Nelda C. and H.J. Lutcher Stark Foundation (the "Foundation"); Clyde V. McKee, Jr.,[1] individually; and the Attorney General of the State of Texas, intervenor. We will affirm.

Nita died in 1939. Her probated will named Lutcher as independent executor and divided her residuary estate between their children, William H. Stark II ("Bill") and Homer Stark ("Homer"). As part of the final settlement of Nita's estate, Homer and Bill executed a receipt and release in 1948 for the properties they received and disclaimed any further interest in properties of their mother's estate.

Lutcher married Nelda in 1943.[2] When Lutcher died in 1965, his will was admitted to probate and Nelda was appointed independent executrix pursuant to Lutcher's will. Under the will's terms, Homer and Bill each were entitled to legacies of $1,000,000, with the remainder of the estate being divided between Nelda and the Foundation. The legacies to Homer and Bill were paid, and each executed a release in 1969.

Bill died in 1979. In 1988, his heirs, appellants here, filed suit against the Foundation and Nelda, individually and as independent executrix of Lutcher's estate. As plaintiffs in this prior litigation, appellants claimed that Lutcher, as independent executor of Nita's estate, had concealed material information regarding Nita's alleged community property; they also asserted that Nelda and the Foundation had continued the alleged fraudulent conceal-ment and had benefitted from Nita's assets, which allegedly had been wrongfully diverted first to Lutcher and then to Nelda and the Foundation, all to the detriment of Bill and Homer. Bill's heirs sought: (1) an accounting of the estates of Nita and Lutcher; (2) a constructive trust over the assets of Nita's and Lutcher's estates; and (3) damages. Ultimately, this prior litigation settled and plaintiffs, the appellants here, received $2,500,000 and executed a release.

Nelda died in 1999, and her will was admitted to probate, with appellees Benckenstein, Wingate, and Riedel being appointed independent co-executors. Subsequently, appellees learned appellants intended to file suit to set aside the release. Appellees filed the instant suit under the Uniform Declaratory Judgments Act ("Act"). *See* Tex. Civ. Prac. & Rem.Code §§ 37.001–.011 (Vernon 1997 & Supp. 2005). Appellees sought a declaration of the effect of the release against claims based on issues adjudicated in the prior litigation.

After appellees filed a motion for summary judgment in their declaratory judgment cause, appellants filed counterclaims and third-party claims alleging breach of fiduciary duty, fraud, conversion, cancellation of release, constructive and/or resulting trust. Appellees amended their motion for summary judgment to include grounds of release, restitution, ratification, and res judicata. The trial court granted summary judgment for appellees and awarded fees and costs to appellees under the Act.

---

1. Appellee Clyde V. McKee, Jr., died on September 14, 2004, and a suggestion of his death was filed on September 30, 2004. The suggestion requested that the Estate of Clyde McKee, Deceased, be made an appellee in place of the decedent personally and that Larry C. Hunter, counsel of record for decedent, be designated as the estate's personal representative for this appeal.

2. After Nita's death, Lutcher married Ruby Childers, who died in 1941. Ruby was Nelda's sister.

Appellants bring three issues. First, they maintain the trial court erred in granting declaratory judgment; second, they contend the trial court erred in determining res judicata applied; and third, they say the grant of attorneys' fees was error.

*Was the Declaratory Judgment Proper?*

Appellants assert the trial court's grant of declaratory judgment was improper for three reasons: (1) appellees were not entitled to a declaration of non-liability in a tort action; (2) necessary parties were not before the court; and (3) Texas courts lack subject matter jurisdiction to determine real property interests in out-of-state property.

Appellants first argue that because their own causes of action presented as counterclaims—fraud, breach of fiduciary duty, negligent misrepresentation, and conversion—sound in tort, appellees may not obtain a judicial declaration of non-liability. Appellees respond that their declaratory action only sought a declaration as to the validity of the release signed by appellants in the prior litigation and did not seek a judicial declaration of tort non-liability.

The purpose of the Declaratory Judgments Act is to declare existing rights; it is designed to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." TEX. CIV. PRAC. & REM.CODE ANN. § 37.002(b) (Vernon 1997); *see Republic Ins. Co. v. Davis,* 856 S.W.2d 158, 164 (Tex.1993). Among other instances in which a declaratory judgment would be proper, the Act provides that an interested person under a written contract, or other writings constituting a contract, may seek a determination of any question of construction or validity arising under the instrument and may obtain a declaration of rights, status, or other legal relations

thereunder. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.004(a) (Vernon 1997). A contract may be construed either before or after a breach. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.004(b) (Vernon 1997).

■ A potential defendant may not use a declaratory judgment action to determine its potential tort liability. *See Abor v. Black,* 695 S.W.2d 564, 566–67 (Tex.1985). However, this rule evolves from the recognition that only plaintiffs may sue for torts. *See Hartman v. Sirgo Operating, Inc.,* 863 S.W.2d 764, 767 (Tex. App.-El Paso 1993, writ denied). In a contractual relationship, any party may breach the contract, and, thus, any party may sue for the breach and seek a judicial determination of contractual rights. *Id.*

■ As a release is a contract, *Schlumberger Technology Corp. v. Swanson,* 959 S.W.2d 171, 178 (Tex.1997), appellees were entitled to request a determination of questions of construction or validity arising under the instrument and to obtain a declaration of rights, status, or other legal relations thereunder. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.004(a)(Vernon 1997); *see Hartman,* 863 S.W.2d at 767.

Appellees' petition for declaratory relief sought construction of a release instrument and a declaration of: (1) the validity of the release instrument (2) the rights and legal relations under the release instrument, (3) the full and final disposition of all claims under the release instrument, and (4) the binding effect of the release instrument. As demonstrated by their pleadings, appellees did not seek a potential tort liability determination. Rather, their suit sought a judicial determination of their rights under a contract. *See Crossley v. Staley,* 988 S.W.2d 791, 797 (Tex.App.-Amarillo 1999, orig. proceeding).

Appellants next argue we lack jurisdiction to decide this matter because appel-

lees' petition for declaratory judgment excludes necessary parties from the current litigation and, thus, is fatally defective. Appellants contend Bill's brother, Homer Stark, and Homer's family are the excluded necessary parties. The Homer Starks were plaintiffs in the prior litigation, but signed a separate, though apparently similar, release in connection with its settlement.

■ The failure to join parties, even those necessary and indispensable, generally is not jurisdictional. *See Cooper v. Texas Gulf Industries, Inc.*, 513 S.W.2d 200, 204 (Tex.1974). Instead, the question usually is whether the trial court should have proceeded with those who were present. *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 162 (Tex.2004)(citing *Cooper*, 513 S.W.2d at 204). A party's absence rarely will deprive the court of jurisdiction to adjudicate the dispute between parties before it. *Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex.1982).

■ We review a trial court's decision to proceed or not to proceed in the absence of necessary parties under an abuse of discretion standard. *See Allegro Isle Condo. Ass'n v. Casa Allegro Corp.*, 28 S.W.3d 676, 678–79 (Tex.App.-Corpus Christi 2000, no pet.); *see also MCZ, Inc. v. Smith*, 707 S.W.2d 672, 675 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.). A trial court abuses its discretion when it rules arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex.1998).

■ Recently, the *Brooks* Court analyzed the interplay between the Declaratory Judgment Act and Texas Rule of Civil Procedure 39. *See Brooks*, 141 S.W.3d at 162–63. The Court observed that Rule 39 governs joinder of persons under the Declaratory Judgment Act. *Brooks*, 141 S.W.3d at 162. While both Rule 39 and section 37.006(a) of the Declaratory Judgment Act[3] mandate joinder of persons whose interests would be affected by the judgment, a trial court's declarations do not prejudice the rights of any person not a party to the proceeding. *See Brooks*, 141 S.W.3d at 162–63. Rule 39[4] deter-

---

**3.** Section 37.006 of the Declaratory Judgment Act states that where "declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties." TEX. CIV. PRAC. & REM.CODE § 37.006(a) (Vernon 1997).

**4.** Rule 39 states in subparts (a) and (b) as follows:

(a) *Persons to be Joined if Feasible.* A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. . . .

(b) *Determination by Court Whenever Joinder Not Feasible.* If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder.

mines if a trial court has authority to proceed without joining a mandatory party. *Id.*

█ Appellants fail to show that Rule 39 required the presence of the Homer Stark family or that the trial court abused its discretion in proceeding without them. *See* TEX.R. CIV. P. 39; *see also Allegro Isle Condo. Ass'n,* 28 S.W.3d at 678–79. Appellants further fail to explain what prevents the trial court's judgment from being "a final and complete adjudication of the dispute for the parties who were before the court." *Brooks,* 141 S.W.3d at 162. Accordingly, we find the trial court did not abuse its discretion in proceeding without the presence of the Homer Stark family.

Appellants further argue that Texas courts lack subject matter jurisdiction to adjudicate title to real property located in Louisiana. Appellants contend a "naked question of title" exists because Bill and Homer Stark are entitled to interests in Louisiana real property under that states's forced heirship rights.[5]

█ It is well-settled law that Texas courts are without power or jurisdiction to adjudicate title to land in another state. *Holt v. Guerguin,* 106 Tex. 185, 163 S.W. 10, 12 (1914); *Kelly Oil Co., Inc. v. Svetlik,* 975 S.W.2d 762, 764 (Tex.App.-Corpus Christi 1998, pet. denied); *Hartman v. Sirgo Operating, Inc.,* 863 S.W.2d 764, 766 (Tex.App.-El Paso 1993, writ denied). However, Texas courts may require a party over whom it has jurisdiction to convey a real property interest located in another state. *McElreath v. McElreath,* 162 Tex. 190, 345 S.W.2d 722 (1961); *Hartman,* 863 S.W.2d at 766. "The distinguishing factor

between these two principles is whether the cause before the Court involves a naked question of title." *Hartman,* 863 S.W.2d at 766 (citing *Massie v. Watts,* 10 U.S. (6 Cranch) 148, 3 L.Ed 181 (1810)).

█ We look to the facts alleged in plaintiff's petition to determine the nature of the rights and relief sought. *McDowell v. McDowell,* 143 S.W.3d 124, 127 (Tex. App.-San Antonio 2004, pet. denied)(citing *Renwar Oil Corp. v. Lancaster,* 154 Tex. 311, 276 S.W.2d 774, 775 (1955)). Here, appellees sought a determination of the parties' rights and legal obligations under the release agreement. The trial court was not required to determine ownership of Louisiana real property interests and neither was any relief sought requiring the transfer of such interests. This case does not involve a naked question of title. *See Hartman,* 863 S.W.2d at 766–67. We hold the trial court had subject matter jurisdiction.

Appellants' arguments under issue one are not persuasive. Issue one is overruled.

█ Issue two asks: "Did the court err in granting in [sic] ruling a prior judgment is res judicata as to matters that subsequently arise?" As *Barr v. Resolution Trust Corp. ex rel. Sunbelt Federal Sav.,* 837 S.W.2d 627, 628 (Tex.1992), explains, the doctrine of res judicata, or claim preclusion, prevents the relitigation of a claim or cause of action that a court has finally adjudicated as well as relitigation of related matters that, with the use of diligence, a party should have litigated in the first suit. Res judicata was one of the

TEX.R. CIV. P. 39(a), (b).

5. For informational purposes only, we note the Louisiana Third Circuit Court of Appeals, in an unpublished opinion, recently affirmed the trial court's dismissal of appellants'

claims against appellees in the Louisiana litigation. *Ancillary Succession of H.J. Lutcher Stark,* No. 04–323, 885 So.2d 59 (3rd Cir. Sept. 29, 2004)(not designated for publication).

trial court's stated grounds for granting summary judgment in appellees' favor.[6]

But while appellants frame issue two solely in res judicata terms, their briefing of issue two emphasizes other arguments attacking the summary judgment; in particular, they contend the release they signed in the prior litigation does not bar their claims here. We consider first whether the trial court properly granted summary judgment for appellees regarding the release's preclusive effect.

When reviewing a summary judgment, the appellate court takes as true all evidence favorable to the nonmovant; the appellate court also indulges every reasonable inference in the nonmovant's favor and resolves any doubts in nonmovant's favor as well. *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). Texas Rule of Civil Procedure 166a(c) requires the summary judgment movant to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex.2001); *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999). An appellate court may review and affirm on any ground the movant presented in its motion for summary judgment. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex.2004).

The release, entitled "Full, Final, and Complete Release," provided for the payment of $2,500,000 to appellants and for entry of an order dismissing appellants' suit with prejudice. The order of dismissal with prejudice was entered January 17, 1991. The appellants here were the releasing parties in the prior litigation. The appellees here all were either released parties[7] in the prior litigation or are successors in interest to previously released parties.

The claims released in the prior litigation included: all claims, demands, and causes of action, known or unknown, which were or could have been alleged in plaintiffs' several petitions; all claims, demands, and causes of action, known or unknown, arising out of or connected with: (a) any actions or omissions by Lutcher, whether individually or in other capacities, arising at any time during his life time; (b) any acts or omissions by Nelda, whether individually or in other capacities, "arising at any time during her lifetime until the date of the execution of this release;"[8] (c) Nita's estate or Lutcher's estate; (d) the operation or activities of the Foundation, or any other foundation or charity

6. Generally, if a suit is dismissed with prejudice, as occurred here, res judicata applies. *See Bell v. Moores*, 832 S.W.2d 749, 755 (Tex. App.-Houston [14th Dist.] 1992, writ denied). Or where there is a legal relationship, such as under a lease or contract as occurs here, all claims arising from that relationship generally will arise from the same subject matter and be subject to res judicata. *See Sanders v. Blockbuster, Inc.*, 127 S.W.3d 382, 386 (Tex. App.-Beaumont 2004, pet. denied).

7. The released parties were: Nelda Childers Stark, individually and as alleged independent executrix of the estate of H.J. Lutcher Stark, deceased; to the extent it exists, if at all, the estate of H.J. Lutcher Stark, deceased; the Nelda C. and H.J. Lutcher Stark Foundation; all officers, directors, attorneys, and employees of either the Nelda C. and H.J. Lutcher Stark Foundation or Nelda Childers Stark; any individual, corporation, organization, foundation, or other entity alleged now or in the past or in the future to be owners or possessors of or participants in any transactions involving any property alleged to have properly belonged to but withheld from or misappropriated in the estate of Nita Hill Stark, deceased.

8. The release agreement is not dated. But the order dismissing with prejudice was entered January 17, 1991.

principally supported by Nelda; (e) the operation or activities of any corporation of partnership or business entity in which Lutcher or Nelda has or had a controlling interest.

The release also contained the following "non-reliance" language:

> Each Releasing Party states that he or she is entering into and executing this Full, Final, and Complete Release based upon his or her own free evaluation of the facts and circumstances surrounding his or her claims, demands, and causes of action and in reliance upon the advice of his or her own attorneys. Each Releasing Party expressly states that no representations, promises or agreement other than the payment of Two Million Five Hundred Thousand $2,500,000 has been made by any Released Party and each Releasing Party expressly states that the entering into and execution of this Full, Final and Complete Release is in no way conditioned upon or in reliance upon any representations, promises, or other agreements made by any of the Released Parties.

Citing *Niemeyer v. Tana Oil and Gas Corp.*, 39 S.W.3d 380, 388 (Tex.App.-Austin 2001, pet. denied), appellants maintain that while the release here applies to all past and present claims existing at the time of its execution, the release does not expressly bar prospective claims that might arise as to future claims or claims involving fraud in the underlying transaction, including their claims in the current litigation.[9] However, *Niemeyer* is distinguishable; there the release did not address "unknown" claims and disclaimer of reliance was not an issue. *Niemeyer*, 39 S.W.3d at 388–89.

On the other hand, *Schlumberger* is more directly on point; it involves both a release of unknown claims and a disclaimer of reliance. *See Schlumberger*, 959 S.W.2d at 174. It also involves presumed fraud. *Id.* at 178 ("Accordingly, we assume, as we must, that Schlumberger misrepresented the project's technological feasibility and commercial viability and that such misrepresentations are actionable as fraudulent inducement.").

In *Schlumberger*, a settlement agreement was reached between the Schlumberger Corporation and the Swansons, who were partners in a joint venture to mine diamonds on the ocean floor off the coast of South Africa. *See id.* at 174. Schlumberger and the Swansons negotiated a buy-out, and, in exchange for the price paid by Schlumberger, "the Swansons relinquished all rights, claims, and interests in the offshore diamond project ... and release[d] all causes of action against Schlumberger, known or unknown." *Id.* The Swansons specifically agreed in the release that "they were not relying on any statement or representation of Schlumberger ..., that they were relying on their own judgment, and that they had been represented by counsel who had explained the entire contents and legal consequences of the release." *Id.* Later, the Swansons sued Schlumberger, claiming they were fraudulently induced into signing the contract and release and misled by Schlumberger about the value of the project. *Id.*

The *Schlumberger* Court recognized the inherent tension between the principle that the "[p]arties should be able to bargain for and execute a release barring all further dispute," *Id.* at 179, and prior authority holding that clauses in contracts, including merger and disclaimer provisions, need not bar subsequent claims of fraudulent in-

---

9. Appellants' current claims are fraud and conversion, as well as breach of fiduciary duty; appellants further seek to cancel the release, and to impose a constructive trust.

ducement. *See id.* at 178–79. The court held "a release that clearly expresses the parties' intent to waive fraudulent inducement claims, or one that disclaims reliance on representations about specific matters in dispute, can preclude a claim of fraudulent inducement," but also emphasized that "a disclaimer of reliance or merger clause will not always bar" such a claim. *Id.* at 181. Because the parties should be able to rely on their negotiated disclaimer or merger clauses to resolve fully their disputes, the question for the court was "under which circumstances such disclaimers are binding." *Id.* at 179. For the answer to this question, the court looked to "[t]he contract and the circumstances surrounding its formation. . . ." *Id.*

*Schlumberger* indicates certain factors to consider when determining whether a reliance disclaimer is binding. That the negotiating parties in *Schlumberger* were represented by counsel, were experts in the subject matter of the negotiations, and were bargaining at arm's length were important to the Court. *See id.* at 180. In addition, the Court noted that at the center of the parties' dispute was the object of the alleged misrepresentations—the value of the mining project—and that the sole purpose of the unambiguous release was to end that dispute "once and for all." *Id.* The Court concluded that, based on all of the facts and circumstances surrounding the release, it was clear the release was meant to apply to representations about the value of the project, "which, after all, was the very dispute that the release was supposed to resolve." *Id.* The Swansons were precluded from claiming reliance on Schlumberger's prior representations about the project's value. *Id.* While rejecting the argument that merger or disclaimer clauses should be binding whenever parties to the agreement are represented by independent legal counsel, the Court did not require that all the *Schlumberger* factors be present for a reliance disclaimer to be binding. *See id.* at 178; *Atlantic Lloyds Ins. Co. v. Butler*, 137 S.W.3d 199, 216–17 (Tex.App.-Houston [1st Dist.] 2004, pet. denied).

Here the release, as in Schlumberger,[10] covers all claims, whether known or unknown and further disclaims reliance on representations about the specific matter in dispute. The parties here were represented by counsel, and bargained at arm's length over the agreement's terms. The final agreement contained releases of claims and a payment of cash. The disclaimer language signed by the appellants case tracks the language of the disclaimer held effective in *Schlumberger* and similarly expresses the parties' intent to unequivocally disclaim reliance upon appellees' representations. And, although there is no evidence the individual appellees were "knowledgeable and sophisticated" about issues raised in the prior litigation, there is

---

10. In *Schlumberger*, the parties released all " 'causes of action of whatsoever nature, or any other legal theory arising out of the circumstances described above, from any and all liability damages of any kind known or unknown, whether in contract or tort.' " Further, the Swansons disclaimed reliance upon representations by Schlumberger, saying:

"[E]ach of us [the Swansons] expressly warrants and represents and does hereby state . . . and represent . . . that no promise or agreement which is not herein expressed has been made to him or her in executing this release, and that **none of us is relying upon any statement or representation of any agent of the parties being released hereby. Each of us is relying on his or her own judgment** and each has been represented by . . . legal counsel in this matter. The aforesaid legal counsel has read and explained to each of us the entire contents of this Release in Full, as well as the legal consequences of this Release . . . . (emphasis added)"

*Schlumberger*, 959 S.W.2d at 180.

no dispute the plaintiffs were represented by "highly competent and able legal counsel" who negotiated at arm's length with appellees' counsel. *See Butler*, 137 S.W.3d at 216–17.

Appellants argue *Schlumberger* does not apply here because of appellees fraudulent representations. Even if we assume appellees fraudulently misrepresented material facts to appellants in the prior litigation, the release's disclaimer language precludes appellants' recovery here.[11] *See Schlumberger*, 959 S.W.2d at 180.

Appellants further assert *Schlumberger* does not apply because appellees owed appellants a fiduciary duty of full and complete disclosure. For *Schlumberger's* fiduciary duty exception to apply here, appellants are required to show the existence of a fiduciary relationship between themselves and appellees at the time the release was executed in 1991. *Id.* at 177.

Appellants complain Nelda, as independent executrix of Lutcher's estate, knowingly and intentionally included assets and properties in his estate that belonged to Nita's estate instead. However, any of appellants' claims against Nelda regarding Lutcher's estate were resolved in the prior litigation. In 1990, the trial judge granted partial summary judgment in Nelda's favor, dismissing all of appellants' claims against her as independent executrix of Lutcher's estate. If Nelda allegedly breached any fiduciary duty to appellants arising from her role as independent executrix of Lutcher's estate, that issue was resolved by the 1990 partial summary judgment. Appellants fail to show how Nelda had a fiduciary duty to them in 1991, when the prior litigation was settled with the release's execution. Appellants further fail to show how Nelda's independent executrix, Benckenstein, or the Foundation would have a fiduciary duty to appellants in the absence of Nelda's having such a duty.

We find the trial court's summary judgment was proper based on the release and its disclaimer of reliance. Our findings on the release issue are dispositive of appellants' summary judgment complaints. *See Two Thirty Nine Joint Venture*, 145 S.W.3d at 157.

We need not consider the remainder of appellants' issue two arguments.[12] Issue two is overruled.

In issue three, appellants complain appellees have failed to establish the requirements for an award of attorneys' fees under the Declaratory Judgment Act. The trial court awarded $19,491.55 in attorneys'

---

11. To support their fraud claim, appellants direct us to the sworn statements and affidavits of (1) Charles M. Kinney, a former security guard for the Stark family, (2) Clayton Newberry, also a former security guard for the Stark family, and (3) John Creswell, an employee of the Stark family for over fifty years. Appellants maintain the statements of Kinney and Newberry show appellees hid evidence during the prior litigation, while Creswell's statement shows appellees burned evidence during the prior litigation. But, Kinney testified he had only "second hand" information about documents being hidden. Newberry maintained, "to the best of [his] knowledge", that certain documents about Stark museum assets were never provided to appellants. Creswell could identify only one type of document being burned during the prior litigation-building material tickets.

12. Other of appellants' issue two arguments are:

1. retention of benefits paid does not constitute ratification;
2. statute of limitations does not bar appellants' claims;
3. appellants' factual claims are valid;
4. appellants have an interest in wrongfully withheld properties and assets, namely, Big Lake and other Louisiana property; Caddo Parish, Louisiana, mineral interest; Texas timber—Wier Long-leaf lumber; and Roslyn Ranch in Colorado.

fees to intervenor, the Attorney General of the State of Texas and $458,411.14 in attorneys' fees to the remainder of the appellees.

When a trial court awards fees in a declaratory judgment proceeding, we review the award under an abuse of discretion standard, "subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998); TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). A trial court abuses its discretion when it rules arbitrarily, unreasonably, or without regard to guiding legal principles or supporting evidence. *Bocquet,* 972 S.W.2d at 21. However, an abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978). Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision. *Holley v. Holley,* 864 S.W.2d 703, 706 (Tex. App.-Houston [1st Dist.] 1993, writ denied).

To establish that the fees were reasonable and necessary, the party seeking attorney's fees is required to show the fees were incurred while suing the opposing party on a claim allowing recovery of such fees. *See Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 10 (Tex.1991). "A recognized exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their 'prosecution or defense entails proof or denial of essentially the same facts.'" *Id.* at 11 (quoting *Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.,* 739 S.W.2d 622, 624–25 (Tex.App.-Dallas 1987, writ denied)). "Therefore,

when the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are 'intertwined to the point of being inseparable,' the party suing for attorney's fees may recover the entire amount covering all claims." *Id.* at 11–12 (quoting *Gill Sav. Ass'n v. Chair King, Inc.,* 783 S.W.2d 674, 680 (Tex.App.-Houston [14th Dist.] 1989), *modified,* 797 S.W.2d 31 (Tex.1990)).

Appellants maintain appellees did not show the requested attorneys' fees were reasonable, necessary, equitable, and just. Appellants say appellees only produced billing summaries rather than billing statements to support the fee amounts and that the summaries do not show who performed the work and only show the months in which it was performed. Appellants further maintain appellees should have segregated the attorneys' fees incurred with the bringing of the declaratory judgment action from those incurred in defending the various counterclaims asserted by appellants.

Attorneys for appellees presented extensive testimony and exhibits regarding their fees, including their time spent on the case, their usual and customary rates, the difficulty of the issues, and their expertise. Appellees' counsel of record testified regarding the reasonableness and necessity of the fees and costs incurred from the filing of the declaratory action to the summary judgment hearing. Such testimony provides sufficient evidence as to the reasonableness and necessity of the fees and also shows the justness and equity of the fees. The testimony encompassed (1) the experience of the attorneys and paralegals involved; (2) the complexity of the issues; (3) the hours worked by the attorneys and paralegals; (4) their billing rates; (5) rates for similar services in the locality; (6) fees incurred based on time and rates as well as costs, and (7) the result obtained. Appellees' counsel also testified the fees were

reasonable and necessary. Further, appellees also submitted invoices reflecting the tasks performed, the individuals who performed the tasks, the time spent and the hourly rate charged. That appellants' expert witness presented conflicting testimony does not show the trial court abused its discretion. *See Davis,* 571 S.W.2d at 862.

Appellees show that appellants' counterclaims not only arise out of the same transaction as the release upon which the declaratory action is based, but they also are the same claims released by appellants in the prior litigation. We find the prosecution of the declaratory action and the defense of the counterclaims are inextricably intertwined and that segregation of the fees was unnecessary.

On the record before us, we cannot say that the district court abused its discretion in awarding attorney's fees pursuant to appellees. We overrule appellants' third issue and affirm the trial court's grant of summary judgment, including the award of attorneys' fees and costs in favor of appellees.

AFFIRMED.