# NO. 12-23-00112-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *REBECCA DE LA ROSA AND CESAR DE LA ROSA,* <br> *APPELLANTS* | § | *APPEAL FROM THE 273RD* |
| | § | *JUDICIAL DISTRICT COURT* |
| *V.* | | |
| *HESTON HAYES AVERY AND ROBERT D. AVERY,* <br> *APPELLEES* | § | *SHELBY COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Rebecca De La Rosa and Cesar De La Rosa (collectively Appellants) appeal the trial court's order denying their motion to strike Appellee Robert D. Avery's plea in intervention as well as the trial court's summary judgment entered in his favor. Appellants raise four issues on appeal. We affirm.

### BACKGROUND

On February 26, 2020, Heston Avery decided to play a prank on A.D.L.R., a friend who came to his house to visit. In so doing, he pointed a shotgun at A.D.L.R. Heston did not believe the shotgun was loaded when he pulled the trigger. The shotgun was, in fact, loaded. It fired. A.D.L.R. later died from his wounds.

Robert Avery, Heston's grandfather, gave Heston the shotgun in 2015, when Heston was twelve or thirteen-years-old and living in Temple, Texas. Because Heston's parents would not allow him to keep the shotgun at their house, Robert kept the gun at his home until Heston and his family moved to Joaquin, Texas in late 2018, at which point Robert gave it to Heston to take with him.

Appellants filed the instant suit against Heston, his parents, and Robert. As to Robert, Appellants alleged that he was negligent in giving Heston the shotgun used to kill A.D.L.R. because he knew or should have known that, due to Heston's youth, inexperience, immaturity, reckless nature, complex developmental trauma, attention deficit disorder, and/or other factors, Heston likely would use the shotgun in a manner involving unreasonable risk of harm to himself or others. Appellants similarly alleged that Heston's parents were negligent in allowing him to possess the shotgun.

On April 4, 2022, a representative of Robert's insurer submitted an offer to Appellants to settle their causes of action against Robert for $25,000. On April 13, Appellants accepted the offer. Appellants signed a release, which stated, among other things, that in executing the release, they generally were not relying upon any statement or representation of the parties released. Appellants' case against Robert was dismissed on May 23. Their case against Heston's parents also was settled and dismissed. Their suit against Heston, the sole remaining defendant, continued.

Thereafter, Appellants assert that they received, after much delay, discovery responses comprising twelve pages of documents from Miracle Farm, Inc.,[1] a residential boys ranch Heston attended between 2018 and 2019. Appellants' counsel notified Robert's counsel that this discovery proved that Robert gave false and incomplete deposition testimony and untruthful interrogatory answers. He further suggested in this letter that Appellants reasonably relied on Robert's sworn testimony and discovery responses in making their decision to settle the case against him, none of the information revealed in the Miracle Farm documents was part of settlement negotiations, and they believed that the "boilerplate" settlement and release were procured by Robert's fraud and fraudulent inducement. Appellants' counsel further related that

---

[1] In multiple instances, Appellants' brief contains no citation to the record for the factual assertions they make. *See* TEX. R. APP. P. 38.1(g). Moreover, their representations related to documents received from Miracle Farm, although supported by a citation to the clerk's record, leads to identical factual statements made in their response to Robert's traditional motion for summary judgment, which, in turn, are unsupported by citation to the summary judgment record. *See* TEX. R. CIV. P. 166a(c); **Walker v. Eubanks**, 667 S.W.3d 402, 409 (Tex. App.– Houston [1st Dist.] 2022, no pet.) ("When responding to a summary judgment motion, the nonmovant must expressly and specifically identify the supporting evidence on file he wants the trial court to consider"). Furthermore, their summary judgment response does not, as presented in the record on appeal, have any supporting evidence attached to it. Because there is no reference to the summary judgment record in their response, it is reasonable for this court to conclude that the absence of such evidence in the clerk's record is not due to an omission on the part of the Clerk's Office. *Cf.* **Lance v. Robinson**, 543 S.W.3d 723, 732–733 (Tex. 2018). Failure to comply with Rule 38.1(g) can result in waiver of appellate issues raised. *See, e.g.*, **Shelley v. Colorado Bd. of Governors**, No. 07-15-00410-CV, 2016 WL 3977388, at *1 (Tex. App.–Amarillo July 19, 2016, pet. denied) (mem. op.).

Appellants asked him to take "all appropriate legal actions against [Robert] and Miracle Farm, Inc., including recission of the settlement agreement and release and a separate lawsuit to recover actual and punitive damages."

On October 13, 2022, Robert intervened in the still-pending suit between Appellants and Heston and sought a declaratory judgment that the partial take-nothing judgment and release are binding upon Appellants, final, and serve to conclude the litigation between the parties.[2] Thereafter, he filed a traditional motion for summary judgment, in which he argued that, because the summary judgment evidence demonstrated that Appellants did not rely on any representations or concealment of information in connection with the execution of the release, the settlement agreement and release were not fraudulently induced and, therefore, are valid, enforceable, and binding on Appellants.

Appellants filed a motion to strike Robert's plea in intervention and, subsequently, filed a response to his motion for summary judgment. In their response, they argued, in pertinent part, that Robert failed to authenticate the exhibits attached to his motion, his suit was not authorized by the Uniform Declaratory Judgment Act (UDJA), and Appellants are not bound by the waiver-of-reliance provision in the release. In a reply filed the day before the hearing on his motion, Robert included an affidavit to authenticate the exhibits.

Ultimately, the trial court denied Appellants' motion to strike and granted Robert's motion for summary judgment. On April 27, 2023, the trial court severed the cause between Appellants and Robert, from their suit against Heston. This appeal followed.

## MOTION TO STRIKE PLEA IN INTERVENTION

In their first issue, Appellants argue that the trial court abused its discretion in denying their motion to strike Robert's plea in intervention.

### Standard of Review and Governing Law

Review of a trial court's order on a motion to strike intervention is subject to an abuse of discretion standard. *Lerma v. Forbes*, 166 S.W.3d 889, 893 (Tex. App.–El Paso 2005, pet.

---

[2] Heston's parents intervened seeking a declaratory judgment that the release between them and Appellants is binding on Appellants, is final, and concludes the litigation between the parties. The trial court granted summary judgment in Heston's parents' favor and issued a severance order as to their declaratory-judgment action. The opinion related to the appeal of that case to this court in Cause Number 12-23-00140-CV issued on the same day as the opinion in this cause.

denied); *see **Breazeale v. Casteel***, 4 S.W.3d 434, 436 (Tex. App.–Austin 1999, pet. denied). A reviewing court cannot conclude that a trial court abused its discretion if, in the same circumstances, it would have ruled differently or if the trial court committed a mere error in judgment. ***Forbes***, 166 S.W.3d at 893. Instead, the test is whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary and unreasonable. ***Id.***

"Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." TEX. R. CIV. P. 60. Once a motion to strike has been filed, the burden shifts to the intervenor to show a justiciable interest in the lawsuit. ***In re Union Carbide Corp.***, 273 S.W.3d 152, 155 (Tex. 2008); ***Guar. Fed. Sav. Bank v. Horseshoe Operating Co.***, 793 S.W.2d 652, 657 (Tex. 1990). A party has a justiciable interest in a lawsuit, and, thus, a right to intervene, when his interests will be affected by the litigation. ***Law Offices of Windle Turley, P.C. v. Ghiasinejad***, 109 S.W.3d 68, 70 (Tex. App.–Fort Worth 2003, no pet.). In other words, the interest is "analogous to that essential for a party to maintain or defend an action." ***J. Fuentes Colleyville, L.P. v. A.S.***, 501 S.W.3d 239, 243 (Tex. App.–Fort Worth 2016, no pet.); ***McCord v. Watts***, 777 S.W.2d 809, 811–12 (Tex. App.–Austin 1989, no writ); *see **Guar. Fed. Sav. Bank***, 793 S.W.2d at 657 (providing that person has a right to intervene "if the intervenor could have brought the same action, or any part thereof, in his own name, or, if the action had been brought against him, he would be able to defeat recovery, or some part thereof"). The interest asserted by the intervenor may be legal or equitable, but it must not be merely contingent or remote. ***Guar. Fed. Sav. Bank***, 793 S.W.2d at 657; ***Law Offices of Windle Turley, P.C.***, 109 S.W.3d at 70. Courts review the pleadings to determine whether an intervenor has a justiciable interest. *See **McCord***, 777 S.W.2d at 811. If a party cannot show a justiciable interest in the lawsuit, the trial court has sufficient cause to strike the plea in intervention. ***Law Offices of Windle Turley, P.C.***, 109 S.W.3d at 70.

Further, even if a party has a justiciable interest, and, thus, a right to intervene in a lawsuit, the trial court still has broad discretion to determine whether the plea in intervention should be stricken. *See **id.**; **Zeifman v. Michels***, 229 S.W.3d 460, 465 (Tex. App.–Austin 2007, no pet.). However, a trial court abuses its discretion by striking a plea in intervention if the intervenor (1) could have brought the same action, or any part of it, in his own name or could have defeated recovery, or some part of it, if the action had been brought against him, (2) the

intervention would not complicate the case by excessively multiplying the issues, and (3) the intervention is almost essential to effectively protect the intervenor's interest. *Guar. Fed. Sav. Bank*, 793 S.W.2d at 657.

**Discussion**

Appellants first argue that Robert's intervention was improper because he did not have a justiciable interest in their wrongful death lawsuit against Heston, as he would not have been able to defeat all or part of the recovery against Heston if the suit had been filed only against him (Robert). More specifically, Appellants contend that there was no claim that Robert and Heston were partners, co-conspirators, or otherwise acted in concert or simultaneously to cause A.D.L.R.'s death. Thus, according to Appellants, Robert would be unable to defeat all or part of any recovery against Heston had the suit been filed against Robert alone.

However, Appellants seek to cast the net of the trial court's discretion too narrowly. An intervenor can occupy the position of a defendant where his claims and prayer align him with the defendant and pit him directly against the plaintiff, even if no parties assert claims against him. *See In re Ford Motor Co.*, 442 S.W.3d 265, 274 (Tex. 2014). Even where an intervenor has not or could not have been sued directly, if a judgment for the plaintiff may lead to an action against the intervenor or otherwise seriously prejudice the intervenor, the intervention is necessary to assure a proper defense against the claim. *See Jenkins v. Entergy Corp.*, 187 S.W.3d 785, 796 (Tex. App.–Corpus Christi 2006, pet. denied) (citing *Guar. Fed Sav. Bank*, 793 S.W.2d at 657). The party must have such interest in the subject matter of the litigation as makes it necessary or proper for him to enter the case for the preservation of that right. *Jenkins*, 187 S.W.3d at 796.

In the instant case, Robert was a defendant prior to the dismissal of the case against him. Once the case against Robert was dismissed, the focus of Appellants' allegations was on Heston's conduct alone. But even so, Robert's interests potentially could have been affected by the suit against Heston had he not intervened. Indeed, were the case against Heston to proceed to a verdict, the court's charge necessarily would have included a submission of Robert's alleged negligence and proportionate responsibility as a "settling person." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.003(a)(3) (West 2020) (trier of fact shall determine percentage of responsibility with respect to each person's, including "settling person," causing or contributing to cause in any way harm for which recovery of damages is sought); *see also id.* § 33.011(5) (West 2020) (defining "settling person" as person who has, at any time, paid or promised to pay money or

anything of monetary value to claimant in consideration of potential liability with respect to personal injury, property damage, death, or other harm for which recovery of damages is sought). Robert doubtlessly is a "settling person." *See id.* § 33.011(5). Thus, because Appellants questioned the validity of the release on fraud grounds and could have sought summary judgment on that issue, Robert had an undeniable interest in the litigation against Heston, inasmuch as the fact finder's potential finding of liability against Heston would require it to attribute a portion of that responsibility, if any, to Robert. *See id.* § 33.003(a)(3). Accordingly, since there existed the possibility that the release could be determined to be invalid, Robert's potential exposure to liability was palpable, his interests against Appellants were aligned with Heston's, and intervention almost was essential to effectively protect Robert's interests. *See **In re Ford Motor Co.***, 442 S.W.3d at 274; ***Guar. Fed. Sav. Bank***, 793 S.W.2d at 657; ***Jenkins***, 187 S.W.3d at 796.

Appellants next argue that Robert's intervention was improper because it would have injected new issues into the case which were completely unrelated to the principal lawsuit, thereby mixing the wrongful death negligence issues with the settlement, breach of contract, and fraudulent inducement issues and causing unnecessary confusion and complicating an already difficult case. However, the issue of the validity of Robert's release was disposed of by traditional summary judgment. Thereafter, this cause was severed from the suit against Heston, which Appellants describe in their brief as "ongoing." Thus, unlike cases wherein courts may seek to surmise how intervention might complicate a case, the record before us requires no such supposition.

Because we conclude that Robert had an undeniable interest in the litigation against Heston, his interests against Appellants were aligned with Heston's, the intervention did not complicate the case, and his intervention almost was essential to effectively protect his interests, we hold that the trial court did not abuse its discretion in denying Appellants' motion to strike Robert's plea in intervention. *See **In re Ford Motor Co.***, 442 S.W.3d at 274; ***Guar. Fed. Sav. Bank***, 793 S.W.2d at 657; ***Jenkins***, 187 S.W.3d at 796. Appellants' first issue is overruled.

### RELEASE - WAIVER-OF-RELIANCE PROVISION

In their second issue, Appellants argue that they are not bound by the settlement agreement and release, despite its waiver-of-reliance provision, because the terms of the release

were "boilerplate," and the parties did not discuss the issue of the current dispute during negotiations.

## Standard of Review

The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); ***Nixon v. Mr. Prop. Mgmt. Co.***, 690 S.W.2d 546, 548 (Tex. 1985). A defendant who conclusively negates at least one essential element of the nonmovant's cause of action is entitled to summary judgment as to that cause of action. *See **Randall's Food Mkts., Inc. v. Johnson***, 891 S.W.2d 640, 644 (Tex. 1995). Likewise, a defendant who conclusively establishes each element of an affirmative defense is entitled to summary judgment. ***Id.*** Once the movant establishes a right to summary judgment, the nonmovant has the burden to respond to the motion and present to the trial court any issues that would preclude summary judgment. *See **City of Houston v. Clear Creek Basin Auth.***, 589 S.W.2d 671, 678–79 (Tex. 1979). The only question is whether an issue of material fact is presented. *See* TEX. R. CIV. P. 166a(c).

When reviewing summary judgments, we perform a de novo review of the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *See **Sudan v. Sudan***, 199 S.W.3d 291, 292 (Tex. 2006); ***KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.***, 988 S.W.2d 746, 748 (Tex. 1999). We are not required to ascertain the credibility of affiants or to determine the weight of evidence in the affidavits, depositions, exhibits, and other summary judgment proof. *See **Gulbenkian v. Penn***, 252 S.W.2d 929, 932 (Tex. 1952); ***Palestine Herald-Press Co. v. Zimmer***, 257 S.W.3d 504, 508 (Tex. App.–Tyler 2008, pet. denied).

Further, all theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *See* TEX. R. CIV. P. 166a(c). If the trial court's order granting summary judgment does not specify the grounds relied on for its ruling, we will affirm it if any of the theories advanced are meritorious. ***State Farm Fire & Cas. Co. v. S.S.***, 858 S.W.2d 374, 380 (Tex. 1993).

## Governing Law

Texas law encourages parties to resolve their disputes by agreement, but settlement agreements—like all other contracts—are unenforceable if they are procured by fraud. ***Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.***, 341 S.W.3d 323, 331 (Tex. 2011);

***Schlumberger Tech. Corp. v. Swanson***, 959 S.W.2d 171, 178 (Tex. 1997).  To establish such fraudulent inducement, a party seeking to invalidate an agreement must prove that it reasonably relied on the other party's misrepresentations to its detriment.  ***Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC***, 573 S.W.3d 224, 228 (Tex. 2019); ***Italian Cowboy***, 341 S.W.3d at 337 (quoting ***Aquaplex, Inc. v. Rancho La Valencia, Inc.***, 297 S.W.3d 768, 774 (Tex. 2009)).  Because after-the-fact protests of misrepresentation easily are lodged, parties who mutually desire to resolve all disputes and buy complete and final peace often include provisions in their settlement agreements expressly disclaiming any reliance on each other's representations.  *See **Forest Oil Corp. v. McAllen***, 268 S.W.3d 51, 60 (Tex. 2008); *see also **Transcor Astra Group S.A. v. Petrobras Am. Inc.***, 650 S.W.3d 462, 473 (Tex. 2022).

The law must balance society's interest in protecting parties against fraudulently induced promises with its interest in enabling parties to "fully and finally resolve disputes between them."  ***Schlumberger***, 959 S.W.2d at 179.  To achieve this balance, we have held that contractual disclaimers of reliance may be enforceable and may negate a subsequent fraudulent-inducement claim if the disclaimer is clear, specific, and unequivocal.  *See **Lufkin***, 573 S.W.3d at 229; ***Italian Cowboy***, 341 S.W.3d at 336; ***Forest Oil***, 268 S.W.3d at 60; ***Schlumberger***, 959 S.W.2d at 179.  Whether a reliance disclaimer is effective in any given case "depends on the contract's language and the totality of the surrounding circumstances."  ***Lufkin***, 573 S.W.3d at 226; ***Forest Oil***, 268 S.W.3d at 60; ***Schlumberger***, 959 S.W.2d at 179. Specifically, courts must consider whether:

> (1) the terms of the contract were negotiated, rather than boilerplate, and during negotiations, the parties specifically discussed the issue which has become the topic of the subsequent dispute;
>
> (2) the complaining party was represented by counsel;
>
> (3) the parties dealt with each other at arm's length;
>
> (4) the parties were knowledgeable in business matters; and
>
> (5) the release language was clear.

***Forest Oil***, 268 S.W.3d at 60.  In considering these factors, our ultimate purpose is to determine whether the contract clearly confirms that "the parties intended once and for all to resolve

specific disputes." *Italian Cowboy*, 341 S.W.3d at 335; *see also* *Forest Oil*, 268 S.W.3d at 58; *Schlumberger*, 959 S.W.2d at 181.

**Discussion**

In the instant case, Appellants' challenge to the trial court's summary judgment declaring Robert's release to be valid relates only to their claim that the waiver-of-reliance provision[3] is ineffective and unenforceable. As to that issue, they do not contend that they were not represented by counsel, nor do they dispute that they dealt with Robert at "arm's length," that they were not knowledgeable in business matters, or that the release language was unclear.

Instead, they argue that Robert offered no summary judgment evidence that the terms of the contract were negotiated and that, during such negotiations, the parties specifically discussed the issue which has become the topic of the subsequent dispute. In so doing, they point to a short series of emails between the April 4, 2022 settlement offer and the April 13 acceptance of that offer. Robert responds that Appellants' counsel referenced his supposed misrepresentations in an earlier email dated January 3, 2022. In that email, Appellants' counsel stated as follows:

> I am hoping that you or your principal will reconsider this claim, after Robert Avery's deposition. Many things could be said about the deposition, but two stand out. First, as Mr. Avery well knows from being on the board, Miracle Farm is not a place for boys that have problems paying attention in class. **It is a residential ranch ministry for boys that "have experienced complex developmental trauma that profoundly impacts them, leading to disconnected relationships, risk-taking behavior, poor decisions, low school performance, and criminal behavior." Heston was at Miracle Farm for these reasons and others**, which directly relate to the shooting of [A.D.L.R.]. Second, for 4 years, from 2015 to 2018, Heston's parents would not let him have the gun in their Temple home, which was only 2.6 miles, not 250 miles, from where Robert Avery lived. Clearly, they did not approve or consent to him having the shotgun for those 4 years, at least. Attached is Plaintiffs' Fourth Amended Petition, which has not yet been filed in court. Much work needs to be done on this case. **It may be better for my clients' and their family, as well as the Avery family, to resolve this case now. Of course, I will be happy to discuss if you desire. Please let me know.**

(emphasis added). Appellants' counsel's concluding remarks in this email undoubtedly amount to an overture to settlement negotiations. In the statements preceding this invitation to resolve the matter, Appellants' counsel sets forth, on behalf of his clients, his supposition that Robert misrepresented the reasons necessitating Heston's residency at Miracle Farm. These reasons and Robert's knowledge thereof comprise the very issue which forms the basis of the parties' subsequent dispute, i.e., Appellants' allegations that Robert lied in his deposition and

---

[3] Specifically, the provision states, "Claimants are not relying upon any statement or representation of the Parties Released, or of any agent or servant of the Parties Released, but is relying upon their own judgment[.]"

interrogatories about his knowledge of Heston's mental conditions, drug and alcohol use/abuse, and his criminal, reckless, and irresponsible actions. *See **Italian Cowboy***, 341 S.W.3d at 335; *see also **Forest Oil***, 268 S.W.3d at 58; ***Schlumberger***, 959 S.W.2d at 181. Appellants make no reference to the January 3 email in their brief, despite its being Exhibit A to Robert's motion for summary judgment.[4]

Appellants further argue that the relevant terms of the contract were boilerplate and not negotiated. We first note that after Robert's insurer made its settlement offer to Appellants, Appellants' counsel sent an email to the insurance company representative, in which he outlined the details of a recent phone call between the two of them in which he had explained the strength of his clients' legal position. Moreover, while there is no evidence that the release significantly evolved through cycles of revisions and Robert does not argue that there is anything particularly unique about the language of the document, on its face, there appears a handwritten deletion of some of its language with Appellants' respective handwritten initials next to it. We conclude that this markup of the release amounts to some evidence that the parties had the ability to change or remove some of the contractual language, and that Appellants, in this singular instance, did so.

Based on the foregoing, we conclude that Appellants' assertions that there is no summary judgment evidence supporting that (1) the terms of the contract were negotiated and (2) during such negotiations, the parties specifically discussed the current matter of dispute are unfounded. Having considered this evidence in the light most favorable to the nonmovant, while indulging every reasonable inference and resolving any doubts against the motion, we conclude that the trial court did not err in finding that there is no genuine issue of material fact as to these two elements and that Robert is entitled to judgment as a matter of law based on a valid written release of liability.[5] *See* TEX. R. CIV. P. 166a(c). Appellants' second issue is overruled.

---

[4] In our further discussion of Appellants' second issue, we reference their counsel's email to Robert's insurance representative memorializing their phone conversation, in which Appellants' counsel discussed the strengths of his clients' legal position with the representative. Appellants' counsel's apparent decision not to mention to the insurance company representative his supposition that Robert made misrepresentations during his deposition testimony was not necessary to satisfy this element given the fact that he related this theory to Robert's counsel when first inviting settlement negotiations.

[5] Additionally, Appellants assert in their brief that Robert violated his legal duty to tell the truth under oath as well as a fiduciary duty to do so. They further point out that Robert failed to demonstrate that his answers in his deposition or answers to interrogatories were truthful. The documents Appellants reference generally in their brief, which might support their allegations that Robert made misrepresentations in his discovery responses, are not part of

**ENTITLEMENT TO RELIEF UNDER THE UNIFORM DECLARATORY JUDGMENT ACT**

In their third issue, Appellants argue that the trial court erred in granting summary judgment in Robert's favor because the UDJA does not apply to potential tort claims, cannot be used to interpret an earlier judgment, and cannot preempt judgment on an issue to be adjudicated in another court.

The purpose of the UDJA is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b) (West 2020). A declaratory judgment is appropriate only if a justiciable controversy exists, resolvable by the declaration sought, concerning the rights and status of the parties. ***Tanglewood Homes Ass'n, Inc. v. Feldman***, 436 S.W.3d 48, 65–66 (Tex. App.–Houston [14th Dist.] 2014, pet. denied); *see* ***Bonham State Bank v. Beadle***, 907 S.W.2d 465, 467 (Tex. 1995); ***Russell v. Metro. Transit Auth. of Harris Cty.***, 343 S.W.3d 825, 833 (Tex. App.–Houston [14th Dist.] 2011, no pet.). There must be a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute. ***Feldman***, 436 S.W.3d at 65.

Among other instances in which a declaratory judgment would be proper, the Act provides that an interested person under a written contract, or other writings constituting a contract, may seek a determination of any question of construction or validity arising under the instrument and may obtain a declaration of rights, status, or other legal relations thereunder. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (West 2020). A contract may be construed either before or after a breach. *See id.* § 37.004(b).

However, as Appellants note, a potential defendant may not use a declaratory judgment action to determine its potential tort liability. *See* ***Stark v. Benckenstein***, 156 S.W.3d 112, 117 (Tex. App.–Beaumont 2004, pet. denied). This rule evolves from the recognition that only plaintiffs may sue for torts. *Id.*; *see* ***Hartman v. Sirgo Operating, Inc.***, 863 S.W.2d 764, 767 (Tex. App.–El Paso 1993, writ denied). In a contractual relationship, any party may breach the contract, and, thus, any party may sue for the breach and seek a judicial determination of contractual rights. ***Stark***, 156 S.W.3d at 117. Since a release is a contract, a party is entitled to request a determination of questions of construction or validity arising under the instrument and

---

the record on appeal. *See* ***Burke v. Ins. Auto Auctions Corp.***, 169 S.W.3d 771, 775 (Tex. App.–Dallas 2005, pet. denied) (appellate court cannot consider documents not formally included in record on appeal).

11

to obtain a declaration of rights, status, or other legal relations thereunder. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a); *Stark*, 156 S.W.3d at 117 (citing *Swanson*, 959 S.W.2d at 178); *see also Bennett v. Zucker*, No. 05-20-00488-CV, 2021 WL 3701374, at \*4 (Tex. App.–Dallas Aug. 20, 2021, pet. denied) (mem. op.); *Hartman*, 863 S.W.2d at 767.

In the instant case, Robert sought a declaration that the settlement agreement and release between him and Appellants is valid, enforceable, and binding upon the parties.[6] As demonstrated by his pleadings and his motion for summary judgment, Robert did not seek a potential tort liability determination. *See, e.g.*, *Stark*, 156 S.W.3d at 117. Instead, Robert sought a judicial determination of his rights under a contract. *See id.*; *Crossley v. Staley*, 988 S.W.2d 791, 797 (Tex. App.–Amarillo 1999, orig. proceeding).

Appellants further argue that the UDJA cannot preempt judgment on an issue to be adjudicated in another court. Specifically, Appellants argue that despite the fact that Robert's plea in intervention by which he sought declaratory judgment was filed before they filed their fraud action against him in Washington County on November 22, 2022, the matter should be adjudicated in Washington County because Robert's declaratory judgment action "did not legally exist until April 27, 2023, when it was severed from Appellants' original lawsuit." We disagree. The very caselaw on which Appellants rely contradicts their argument. "As a general rule, an action for declaratory judgment will not be entertained if there is pending, *at the time it is filed*, another action or proceeding between the same parties and in which may be adjudicated the issues involved in the declaratory action." *Tex. Liquor Control Bd. v. Canyon Creek Land Corp.*, 456 S.W.2d 891, 895 (Tex. 1970) (emphasis added). Because Robert's declaratory judgment action was filed by way of intervention on October 13, 2022, more than one month before Appellants filed suit in Washington County, we conclude that the Washington County suit does not preempt Robert's preexisting declaratory judgment action.

---

[6] This is the relief Robert requested in his motion for summary judgment, which the trial court granted, and which was narrower than the relief Robert set forth in his pleadings. There, Robert requested that the trial court construe the settlement and release instrument and render a declaratory judgment that the partial take-nothing judgment and release are binding upon Plaintiffs, and are final, and conclude the litigation between the parties once and for all. We limit our discussion to the trial court's ability to render the declaratory relief raised in Robert's motion for summary judgment. *See Muston v. Nueces Cty. Sheriff's Dept.*, 122 S.W.3d 469, 471 (Tex. App.–Corpus Christi 2003, no pet.) (trial court cannot grant more relief than was requested by motion for summary judgment). As such, we do not address Appellants' argument that the UDJA cannot be used to interpret an earlier judgment since the trial court's summary judgment related only to the settlement and release. *See id.*

Based on the foregoing, we hold that Robert was entitled to pursue relief under the UDJA to seek a declaration as to the construction and validity of the settlement agreement and release between him and Appellants and that his declaratory judgment action was not preempted by Appellants' suit in Washington County. Appellants' third issue is overruled.

**ROBERT'S SUMMARY JUDGMENT EVIDENCE**

In their fourth issue, Appellants argue that the trial court abused its discretion by accepting and considering Robert's summary judgment evidence because none of it was authenticated until the day before the hearing on his motion.

The same evidentiary standards which apply in trials also control the admissibility of evidence in summary-judgment proceedings. *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 163 (Tex. 2018); *United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997). But the rules of error preservation also apply. *Seim*, 551 S.W.3d at 164; *see Mansions in the Forest, L.P. v. Montgomery Cty.*, 365 S.W.3d 314, 317–18 (Tex. 2012). To preserve a complaint for appellate review, a party must (1) complain to the trial court by way of "a timely request, objection, or motion; and (2) the trial court must rule or refuse to rule on the request, objection, or motion." *Seim*, 551 S.W.3d at 164; *see* TEX. R. APP. P. 33.1(a). And if purported summary-judgment evidence presents a defect in "form," that defect cannot provide grounds for reversal unless specifically pointed out by objection by an opposing party, and where the offending party had an opportunity to correct the objectionable matter but refused to do so. *See* TEX. R. CIV. P. 166a(f).

An objection to the authentication of summary judgment evidence is an objection to the form rather than the substance of the evidence. *See Commint Tech. Servs., Inc. v. Quickel*, 314 S.W.3d 646, 651 (Tex. App.–Houston [14th Dist.] 2010, no pet.). Since Appellants' lack-of-authentication objection was to the form of the evidence, they were required not only to object but also to obtain a ruling on their objection. *Seim*, 551 S.W.3d at 164. Here, Appellants never secured a ruling on their lack-of-authentication objection they now seek to raise on appeal. Accordingly, we hold that Appellants' objections were not preserved for review. *See* TEX. R. APP. P. 33.1(a); *Quickel*, 314 S.W.3d at 651. Moreover, when Appellants raised the objection to the form of the summary judgment evidence, Robert's counsel addressed the objection in his reply, which included an affidavit to authenticate the summary judgment proof. Because Robert corrected the authentication issue Appellants raised, we hold that these form defects do not

13

constitute grounds for reversal.  *See* TEX. R. CIV. P. 166a(f).  Appellants' fourth issue is overruled.

## DISPOSITION

Having overruled Appellants' first, second, third, and fourth issues, we ***affirm*** the trial court's judgment.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered October 31, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 31, 2023**

**NO. 12-23-00112-CV**

**REBECCA DE LA ROSA AND CESAR DE LA ROSA,**
Appellants
V.
**HESTON HAYES AVERY AND ROBERT D. AVERY,**
Appellees

---

Appeal from the 273rd District Court

of Shelby County, Texas (Tr.Ct.No. 20CV35415A)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, that all cost of this appeal are assessed against Appellants, **REBECCA DE LA ROSA AND CESAR DE LA ROSA**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*